STATE of Wisconsin, Plaintiff-Respondent,

v.

Lawrence HARRIS, Defendant-Appellant.†

Court of Appeals

*No. 92-0828-CR. , 92-0829-CR, 92-0830-CR, 92-0831- CR.
Submitted on briefs December 2, 1992.—Decided January 26,
1993.*

(Also reported in 497 N.W.2d 742.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert R. Henak* of *Shellow, Shellow & Glynn, S.C.,* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle,* attorney

general, and *Maureen McGlynn Flanagan,* assistant attorney general.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J.  Lawrence Harris appeals from judgments of conviction for two armed robberies, an attempted first-degree homicide, party to a crime, and attempted escape, assault by a prisoner, and battery by a prisoner, party to a crime. He also appeals from the trial court's orders denying him post-conviction relief in these cases.

Harris raises three issues on appeal. First, he argues that the trial court was deprived jurisdiction over him on the escape-related charges because of what he contends was an unreasonable delay between his arrest and his initial appearance on those charges. Second, he argues that his sentences were based on erroneous information. Third, he maintains that he is entitled to re-sentencing because he claims that post-conviction testimony concerning his potential for rehabilitation raised a "new factor." We disagree on each of these points and affirm.

## I.

On March 29, 1991, Harris pled guilty to the armed robbery charges. On that same date, he entered an *Alford* plea in connection with the attempted homicide charge.[1] The particulars of the robberies are not pertinent to this appeal. The relevant facts relating to the attempted homicide are undisputed. On October 27,

---

[1] *North Carolina v. Alford,* 400 U.S. 25 (1970) (The constitution is not violated when a defendant accepts conviction even though he or she simultaneously claims to be innocent.) (capital case);  *see State v. Johnson,* 105 Wis. 2d 657, 661-663, 314 N.W.2d 897, 899-900 (Ct. App. 1981) (*Alford* pleas may be accepted in Wisconsin).

1990, Harris, his mother, two brothers, and a man named Carmen Cooper searched for a woman that Harris' mother claimed had stolen some of her jewelry. They found Claude Daniels, whom they believed knew where the woman lived. When Daniels refused to tell them what they wanted, the brothers, including Harris, and Cooper, beat Daniels with a baseball bat and a claw hammer. Eventually, Daniels relented, and agreed to give them the requested information. Harris and the other four took Daniels to the woman's home. When the woman was not there, Cooper shot Daniels. Daniels survived.

After Harris' pleas, his bail was revoked and he was remanded to custody in the Milwaukee County Jail pending sentencing. *See* sec. 969.01(2)(c), Stats. On May 11, 1991, prior to sentencing, Harris tried to escape. In the course of the escape attempt, Harris and an accomplice injured at least two sheriff's deputies. Harris and the accomplice were subdued and never made it out of the jail. On May 17, 1991, a criminal complaint was filed charging Harris with the escape-related offenses.

When Harris appeared before the trial court on May 17, 1991, for his initial appearance on the escape-related charges, he objected to that court's jurisdiction on the grounds that there had been an unreasonable delay between his "arrest" for those charges and his initial appearance. The trial court denied his motion to dismiss, and set a trial date. On August 1, 1991, Harris pled guilty to the escape-related charges. Eventually, Harris was sentenced to a total indeterminate period of incarceration of seventy-two-and-one-half years on all charges—five years less than the maximum applicable penalty.

## II.

A. *The Alleged Unreasonable Delay Between Arrest and Initial Appearance.*

Harris contends that the interval between his "arrest" and his initial appearance on the escape-related charges violated the following provisions: section 970.01, Stats.; the due-process clauses of article I, section 8 of the Wisconsin Constitution and the Fourteenth Amendment to the United States Constitution; and the Fourth Amendment to the United States Constitution.[2] Our review on these issues is *de novo. See Manor v. Hanson,* 123 Wis. 2d 524, 533, 368 N.W.2d 41, 45 (1985) (application of statute to undisputed facts presents question of law); *State v. Murdock,* 155 Wis. 2d 217, 226, 455 N.W.2d 618, 621-622 (1990) (scope of constitutional protections reviewed *de novo*). We disagree with Harris' contention.

1. *Harris' statutory and due-process rights.*

"Any person who is arrested shall be taken within a reasonable time before a judge in the county in which the offense was alleged to have been committed." Section 970.01(1), Stats. If the "person is arrested without warrant and brought before a judge, a complaint shall be filed forthwith," section 970.01(2), Stats., and given to

[2] There is some dispute as to when Harris was "arrested" for his attempted escape. Harris points to the criminal complaint, which lists the date of arrest as May 11, 1991. The State argues that the May 11 date on the complaint was the result of a clerical error, and that Harris was never officially arrested for the escape-related charges prior to his initial appearance on May 17. Under either analysis, however, any delay in this case was not illegal or unconstitutional. Accordingly, we will assume, *arguendo*, that Harris was "arrested" on May 11.

the defendant, section 970.02(1), Stats. At this initial appearance, "[t]he judge shall admit the defendant to bail in accordance with ch. 969." Section 970.02(2), Stats. The statutory right of an initial appearance "within a reasonable time," sec. 970.01(1), is a codification of the due-process rights guaranteed by article I, section 8 of the Wisconsin Constitution and by the Fourteenth Amendment to the United States Constitution.[3] *See State v. McKinney*, 168 Wis. 2d 349, 353-354, 483 N.W.2d 595, 597 (Ct. App. 1992). For the purposes of this appeal at least, the rights recognized by these various provisions are thus co-extensive.

As a result of his guilty pleas to the armed robbery and attempted first-degree homicide charges, Harris was in the State's lawful custody before, during, and after the attempted escape; he was not detained as the result of any "arrest" for the escape-related charges. This fact is dispositive.[4]

---

[3] Article I, section 8 of the Wisconsin Constitution provides, in relevant part:

> No person shall be held to answer for a criminal offense without due process of law.

The Fourteenth Amendment to the United States Constitution provides, in relevant part:

> [N]or shall any State deprive any person of life, liberty, or property, without due process of law.

[4] Harris makes a specious suggestion that, having beaten two sheriff's deputies into temporary submission before being eventually subdued, he and his accomplice achieved "liberty" so as to no longer be in "custody" in connection with the charges to which he had pled, thus triggering the initial-appearance guarantees of article I, section 8, the Fourteenth Amendment, and section 970.01, Stats. This argument is akin to the one made by a defendant who, convicted of murdering a fellow inmate, claimed as a set-off to the burial expenses for which he was responsible the savings to the

Harris has not argued that the state engineered the interval between his May 11 "arrest" and his May 17 initial appearance for any improper purpose, or that he was in any way prejudiced. Harris' technical argument ignores the substance of due process in this context—that is, to require the police to promptly "determine whether to release the suspect or to make a formal complaint." *Wagner v. State,* 89 Wis. 2d 70, 75, 277 N.W.2d 849, 851 (1979). His argument cheapens the fundamental rights recognized and protected by the provisions on which he relies. Simply put, absent either prejudice or other unforeseen circumstances that are not present here, the interval between an "arrest" and an initial appearance is never unreasonable where the arrested suspect is already in the lawful physical custody of the State; in such cases, there is no issue over whether the suspect will be released on the new charge. Accordingly, the six-day "delay" in this case violated neither Harris' statutory rights under section 970.01, Stats., nor his constitutional rights to due process under the state and federal constitutions.[5]

## 2. *Harris' Fourth Amendment rights.*

government for not having to house, feed, and clothe the victim. *See United States v. House,* 808 F.2d 508 (7th Cir. 1986).

[5] We find that Harris' rights were not violated, and, therefore, do not reach the issue of whether a trial court is deprived jurisdiction by an unreasonable delay between arrest and an initial appearance. We thus also do not reach the State's argument that Harris waived his challenge to the length of time between his arrest and initial appearance when he pled guilty to the escape-related charges because the State's argument is premised on its contention that a violation of the reasonableness requirement is non-jurisdictional. *See State v. Blalock,* 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) ("cases should be decided on the narrowest possible ground").

The Fourth Amendment to the United States Constitution protects individuals against "unfounded invasions of liberty and privacy" by requiring that arrests be predicated upon a determination of probable cause by a "neutral and detached magistrate." [6] *Gerstein v. Pugh,* 420 U.S. 103, 112 (1975). Where law enforcement needs so demand, that determination may be made *post hoc,* as long as it is done "promptly after arrest." *Id.,* 420 U.S. at 113-114, 125. The Supreme Court has ruled that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein.*" *County of Riverside v. McLaughlin,* 500 U.S. —, 111 S. Ct. 1661, 1670 (1991). Harris claims that the interval between his "arrest" on May 11 and the judicial determination of probable cause on May 17 violates the Fourth-Amendment rule announced by *County of Riverside.*[7] We disagree.

In *County of Riverside,* the Supreme Court emphasized that "a proper understanding of [*Gerstein*] is possible only if one takes into account both sides of the equation." *Id.,* 500 U.S. at —, 111 S. Ct. at 1669. On one side

---

[6] The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures," and provides that "no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV.

[7] The Wisconsin Supreme Court is currently considering whether to apply *County of Riverside* retroactively, as well as the appropriate remedy for any violation of the *County of Riverside* rule. *State v. Koch,* 91-1604. The *County of Riverside* opinion was issued May 13, 1991. Harris' attempted escape was May 11, 1991, and he appeared before the trial court on May 17, 1991. As a result of this overlap, we assume, without deciding, that *County of Riverside* applies here irrespective of whether the decision is or is not to be applied retroactively. We also express no opinion as to what relief is required if the *County of Riverside* rule is violated.

of that equation are the strong law-enforcement inter-
ests in maintaining custody over a possibly dangerous
offender. *Id.*, 500 U.S. at —, 111 S. Ct. at 1668. On the
other side of the equation are the mitigating concerns
that an "incorrect or unfounded" detention "may
unjustly 'imperil [a] suspect's job, interrupt his source of
income, and impair his family relationships.' " *Ibid.
(quoting Gerstein,* 420 U.S. at 114). None of these miti-
gating factors applies to an arrestee who, like Harris, is
already in lawful custody at the time of his "arrest."

As noted, Harris was in lawful custody before, dur-
ing, and after his attempted escape. He was, therefore,
not taken into custody by the arrest, as would be an
arrestee not already in such custody. Accordingly, the
"delay" here did not affect any of the interests that
*Gerstein* and *County of Riverside* sought to protect. We
hold that the forty-eight-hour rule announced in *County
of Riverside* does not apply to persons already in the
State's lawful custody.

B. *The Alleged Errors in Sentencing.*

1. *The Use of Inaccurate Information at
Sentencing.*

Harris claims that the trial court sentenced upon
erroneous information. He rests this claim on his own
testimony at the post-conviction proceedings that com-
ments he made regarding the attempted homicide were
gravely misinterpreted both by the trial court and in the
presentence investigation report. Specifically, Harris
claims that his statement that he only beat the victim
below the waist with the baseball bat was construed by
the trial court as an attempt to minimize his guilt, while
Harris contends he meant it to show that his conduct
did not evince an intent to kill. He also claims that he

never said that he was a "bystander" to the beating, as represented in the presentence report.

Our review of sentencing decisions is limited to determining whether the trial court acted within the ambit of its discretion. *State v. Johnson*, 158 Wis. 2d 458, 463, 463 N.W.2d 352, 355 (Ct. App. 1990). A defendant alleging that a sentencing decision was based on inaccurate information must show that: (1) the information was inaccurate, and, (2) the trial court actually relied on that inaccurate information in sentencing. *Id.*, 158 Wis. 2d at 468, 463 N.W.2d at 357.

Harris has not demonstrated that the trial court relied on inaccurate information. First, Harris does not deny saying that he only struck Daniels with the bat below Daniels' waist. Rather, he insists that the trial court erred in its interpretation of that statement. We will not so circumscribe the trial court's discretion. "It is not within the province of this court or any appellate court to choose not to accept an inference drawn by a factfinder when the inference drawn is a reasonable one." *State v. Friday*, 147 Wis. 2d 359, 370-371, 434 N.W.2d 85, 89 (1989). Second, faced with conflicting evidence on that point, the trial court was free to find that Harris did claim to be but a "bystander" to the beating. *See ibid.* In sum, Harris has not met his burden of proving that the information he challenges on appeal as inaccurate was, in fact, inaccurate. Accordingly, we affirm the trial court's sentence.

2. *A "New Factor" Requiring Re-Sentencing.*

Harris argued at the post-conviction proceedings and on appeal that the sentencing court's "erroneous view of [Harris]'s potential for rehabilitation" is a new factor justifying modification of his sentence. *See Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69, 73

(1975). As Harris recognizes, a successful motion for sentence modification requires, at the threshold, that the defendant show the existence of a "new factor." *State v. Franklin*, 148 Wis. 2d 1, 8, 434 N.W.2d 609, 611 (1989). Whether a defendant succeeds in this threshold requirement is a question of law that we review *de novo. Ibid.*

In *Rosado*, the supreme court defined "new factor" as:

> [A] fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.

70 Wis. 2d at 288, 234 N.W.2d at 73. A "new factor" must be "an event or development that 'frustrates the purpose of the original sentencing.' " *Johnson*, 158 Wis. 2d at 466, 463 N.W.2d at 356 (quoting *State v. Michels*, 150 Wis. 2d 94, 97, 441 N.W.2d 278, 279 (Ct. App. 1989)). The "new facts" to which Harris points are in the form of opinion testimony, given by his grandmother and aunt during the post-conviction proceedings, attesting to his family background and rehabilitative potential. This testimony does not raise a "new factor." At sentencing, the trial court expressly recognized Harris' family background, his relationship with his grandmother, and his rehabilitative needs. The trial court nonetheless concluded that, in view of the violence of the offenses, that the "immense" needs of the community for protection outweighed Harris' needs. We agree with the trial court's comment during the post-conviction proceedings that the testimony at those proceedings was not "inconsistent with the [sentencing] transcript." Accordingly, the matters adduced by that testimony did

not "frustrate[ ] the purpose of the original sentencing."
*Ibid.* Harris has failed to show a new factor justifying
modification of his sentence.

 *By the Court.*—Judgments and orders affirmed.