STATE of Wisconsin, Plaintiff-Respondent,

v.

John E. EVANS, Defendant-Appellant.†

Court of Appeals

*No. 93–1869–CR. Submitted on briefs March 30, 1994.—Decided August 16, 1994.*

(Also reported in 522 N.W.2d 554.)

†Petition to review denied.

70

For the defendant-appellant the cause was submitted on the briefs of *Marla J. Stephens*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, with *Jams M. Freimuth*, assistant attorney general.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

SULLIVAN, J. John E. Evans appeals from a judgment of conviction, after a jury trial, for first-degree sexual assault of a child, contrary to § 948.02(1), STATS., and from an order denying his motion for post-conviction relief. Evans presents three issues for our review. First, he contends that the trial court erred by preventing him on direct examination from eliciting testimony in the form of specific instances of past behavior that attacked the non-testifying victim's character for truthfulness. Second, he challenges the trial court's competency to try his case because of an allegedly deficient probable cause determination and an unreasonable four-day delay between his warrantless arrest and his initial appearance. Finally, he asserts that he was denied effective assistance of counsel by his attorneys' failures to seek dismissal of his prosecution based upon the allegedly deficient probable cause determination and the unreasonable delay. We affirm.

## I. BACKGROUND

On January 24, 1992, City of Milwaukee police arrested Evans without a warrant for the sexual-assault of Alicia T., the eleven-year-old daughter of a friend with whom he was living. Eight hours after his arrest, a court commissioner found probable cause for the arrest based upon an unsworn police "show-up"

report. On Monday, January 27, the district attorney issued a criminal complaint and Evans was held for violation of his probation. At his initial appearance on January 28, a court commissioner found probable cause based upon the criminal complaint. Three different attorneys represented Evans during the early stages of his prosecution—none of them objected to the delay between his arrest and his initial appearance.

Evans was subsequently tried before a jury. Alicia never testified during the trial. Over Evans's Confrontation and Compulsory Process Clause objections, the trial court found her unavailable as a witness; nonetheless, several of Alicia's out-of-court statements accusing Evans of assault were admitted at trial. All of these accusatory statements were made by Alicia during the early morning hours of January 24, shortly after her alleged assault and prior to Evans's arrest.[1] These statements provided the basis for his prosecution.

Evans does not challenge these statements on appeal, but instead asserts that the trial court, in a pre-trial ruling, improperly prevented him at trial from introducing evidence to challenge Alicia's character for truthfulness. Evans's defense was that Alicia was lying when she made the above statements. Thus, he wanted to impugn her character by introducing specific instances where Alicia had lied in the past. During pre-trial motions, Alicia's mother testified on cross-examination that Alicia made false accusations on two prior occasions. She testified that in 1990, Alicia was playing with her mother's gun and accidently shot herself. Ali-

---

[1] Alicia made these statements to her mother, her aunt, the police, and a nurse at the sexual assault treatment center. Evans does not contest that these statements were properly admitted into evidence through various hearsay exceptions.

cia told police that she was shot during a struggle with a masked-intruder. In 1991, Alicia told her teacher that her mother was going to "whoop" her when she returned home from school, intimating physical abuse. This was also untrue.

The State objected to any introduction of these incidents by Evans at trial. Evans countered that if he was precluded from examining the witnesses about Alicia's untruthful conduct, he would have no defense.

The trial court ruled that Alicia's character for truthfulness was relevant, but that Evans could not question any witness on direct examination about her prior false accusations. Only if the State, on direct examination, first attempted to bolster Alicia's character for truthfulness could Evans then elicit testimony about these incidents on cross-examination. A jury subsequently found him guilty of first-degree sexual assault to a child. He now appeals.

## II. SPECIFIC INSTANCES CHARACTER EVIDENCE

Evans contends the trial court erroneously exercised its discretion when it prevented him on direct examination from attacking the credibility of the unavailable victim through the use of her past instances of untruthfulness. He asserts the trial court erred in refusing to admit the specific instances in several ways: first, the court should have treated Alicia as a hearsay declarant rather than a witness, thereby allowing the specific instances into evidence; alternatively, the court should have treated the victim's character for lying as an essential element of Evans's defense, thereby allowing Evans to attack the victim's credibility with specific instances of her lying in the past; and finally, the court should have allowed Evans

to attack Alicia's character by the use of specific instances of her conduct so that Evans could exercise his constitutional right to present a defense. We disagree.

A trial court possesses wide discretion in determining whether to admit or exclude evidence, and we will reverse such determinations only upon an erroneous exercise of that discretion. *See State v. Oberlander*, 149 Wis. 2d 132, 140-41, 438 N.W.2d 580, 583 (1989). The trial court properly exercises its discretion if its determination is made according to accepted legal standards and if it is in accordance with the facts on the record. *Id.*

## A. Alicia's Status for Character Evidence Purposes

Pursuant to § 904.04, STATS., and subject to specified exceptions, evidence of a person's character or character trait is not admissible for the purpose of proving the person acted in conformity with that character or trait.[2] The exceptions to this general rule are dependent on the status of the person whose character

---

[2] Section 904.04, STATS., provides in relevant part:

**Character evidence not admissible to prove conduct; exceptions; other crimes. (1)** CHARACTER EVIDENCE GENERALLY. Evidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

(a) *Character of accused.* Evidence of a pertinent trait of the accused's character offered by an accused, or by the prosecution to rebut the same;

(b) *Character of victim.* Except as provided in s. 972.11(2), evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

is at issue. Section 904.04(1)(a-c), STATS. In the present case, the trial court gave a lengthy discussion of Alicia's status in the trial. It concluded that Alicia T. took on the status of a witness, even though she did not testify.[3] The court then determined that under §§ 904.04(1)(c), and 906.08, STATS., Alicia's character for truthfulness could be attacked by Evans, but only in the form of reputation or opinion evidence. If, however, the State placed a witness on the stand to testify to Alicia's character for truthfulness, Evans was free to inquire on cross-examination of that witness regarding any relevant specific instances of Alicia's past false accusations.

Evans contends that the trial court erred because Alicia was not a witness. We disagree. While Alicia was not technically a witness, she was, as Evans properly points out, a hearsay declarant. Pursuant to § 908.06, STATS.,[4] once a hearsay statement is admitted into evidence, the hearsay declarant's credibility is open to

---

(c) *Character of witness.* Evidence of the character of a witness, as provided in ss. 906.07, 906.08 and 906.09.

[3] The trial court stated: "I'm finding that because she is a victim in this case, [and] because her testimony is so critical and essential in this case[,] that she takes on the character of a witness in this case . . . ."

[4] Section 908.06, STATS., provides:

**Attacking and supporting credibility of declarant.** When a hearsay statement has been admitted in evidence, the credibility of the declarant may be attacked and if attacked may be supported by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to

attack. Such an attack may be supported by any evidence that is admissible if the declarant had testified *as a witness*. *Id*. Accordingly, § 908.06, STATS., incorporates the methodology of attacking the character of a witness as set forth in §§ 904.04(1)(c) and 906.08, STATS.

Section 908.06, STATS., gives no further guidance on what form this evidence may take; however, two commentators have observed "[i]t would seem that almost all forms of impeachment available to attack a trial witness could be used to impeach a hearsay declarant. Inconsistent statements . . . can be used. Bias evidence may be elicited. Character for truthfulness can be explored." 2 STEPHEN A. SALTZBURG & MICHAEL M. MARTIN, FEDERAL RULES OF EVIDENCE MANUAL 468 (5th ed., 1990).

Section 906.08, STATS., provides additional guidance. The credibility of a person who is a witness may be attacked or supported, pursuant to § 906.08, STATS., by use of opinion and reputation evidence of character for truthfulness or untruthfulness. Specific instances of the conduct of a witness, may not be proven by extrinsic evidence, but "if probative of truthfulness or untruthfulness and not remote in time, [they may] be inquired into on cross-examination of the witness or on cross-examination of a witness who testifies to his or her character for truthfulness or untruthfulness." Section 906.08(2), STATS.

Thus, although one cannot cross-examine a hearsay declarant (the mode of credibility impeachment under § 906.08(2), STATS.) all of the other § 906.08(2) limitations on use of extrinsic evidence survive except that pursuant to § 908.06, STATS., one can use

examine the declarant on the statement as if under cross-examination.

"[e]vidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement" to impeach a hearsay declarant's credibility. In the present case, however, the evidence Evans sought to introduce was not inconsistent with any of Alicia's hearsay statements and, therefore, the above exception is inapplicable.

Consequently, we conclude the trial court was correct when it treated Alicia as a witness and pursuant to § 906.08, STATS., precluded Evans from attacking her character on direct examination of his witnesses with specific instances of her past false accusations.

## B. Character as Essential Element of a Defense

Evans additionally asserts that the trial court should have allowed him to elicit testimony of Alicia's prior false accusations under § 904.04(1)(b), STATS., which allows the accused to present evidence of a pertinent trait of character of the victim of the crime. The method of presenting such evidence, however, is guided by § 904.05, STATS., which provides:

**904.05 Methods of proving character**

(1) REPUTATION OR OPINION. In all cases which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(2) SPECIFIC INSTANCES OF CONDUCT. In cases in which character or a trait of character of a person is an essential element of a charge, claim or defense, proof may also be made of specific instances of the person's conduct.

Evans alleges that Alicia's character for untruthfulness is an essential element of his defense (i.e., that she lied in the past so she has a character trait for lying). We are not persuaded. As a basis for our conclusion, we look to the Federal Rules of Evidence Advisory Committee Notes for guidance. Federal Rule of Evidence 404 is the federal equivalent to § 904.04, STATS. The Committee Note to Federal Rule 404 discusses the major ways character issues arise:

> (1) Character may itself be an element of a crime, claim, or defense. A situation of this kind is commonly referred to as "character in issue." Illustrations are: the chastity of the victim under a statute specifying her chastity as an element of the crime of seduction, or the competency of a driver in an action for negligently entrusting a motor vehicle to an incompetent driver . . . .

> (2) Character evidence is susceptible of being used for the purpose of suggesting an inference that the person acted on the occasion in question consistently with his or her character. This use of character is often described as "circumstantial." Illustrations are: evidence of a violent disposition to prove that the person was the aggressor in an affray, or evidence of honesty in disproof of a charge of theft. This circumstantial use of character evidence raises questions of relevancy as well as questions of allowable methods of proof.

The Committee Note to Federal Rule 405 describes why there are limitations placed on the methods of proof allowed when dealing with character:

> Of the three methods of proving character provided by the rule, evidence of specific instances of conduct is the most convincing. At the same time it

81

possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time. Consequently the rule confines the use of evidence of this kind to cases in which character, is in the strict sense, in issue and hence deserving of a searching inquiry. When character is used circumstantially and hence occupies a lesser status in the case, proof may be only by reputation and opinion.

From the Committee Note discussions, we are persuaded that under the Wisconsin Rules of Evidence it is clear that, while Alicia's character for truthfulness might be relevant to Evans's defense, it was not an essential element of his defense. It is akin to the Committee Note's example of using evidence of honesty to disprove a theft. Use of Alicia's alleged character for untruthfulness to disprove her allegation of sexual assault is merely a circumstantial inference and in no way reaches the level of an essential element of Evans's defense. Therefore, under § 904.04(1)(b), STATS., Evans could attempt on direct examination to prove Alicia's character for untruthfulness only through the use of opinion or reputation evidence, not specific instances of conduct.

## C. Right to Present a Defense

Evans also argues that the trial court impermissibly limited his constitutional right to present a defense by preventing him from introducing evidence of Alicia's past false accusations. We disagree. The due process rights of a criminal defendant are "in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). The right to present evidence is rooted in the Confrontation and Compulsory Process Clauses of the

United States and Wisconsin Constitutions. *State v. Pulizzano*, 155 Wis. 2d 633, 645, 456 N.W.2d 325, 330 (1990). That right, however, is not absolute. *Id.* at 646, 456 N.W.2d at 330 (citing *Chambers*, 410 U.S. at 295). While we recognize the trial court may not "deny a defendant a fair trial or the right to present a defense by the mechanistic application of the rules of evidence," *State v. DeSantis*, 155 Wis. 2d 774, 793, 456 N.W.2d 600, 609 (1990) (citing *Davis v. Alaska*, 415 U.S. 308 (1973)), "[c]onfrontation and compulsory process only grant defendants the constitutional right to present relevant evidence not substantially outweighed by its prejudicial effect." *Pulizzano*, 155 Wis. 2d at 646, 456 N.W.2d at 330.

The gravamen of Evans's contention is that, in his case, the application of the evidentiary rules governing character evidence violated his right to present a defense. We disagree. We have observed that:

> "Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of the fact to reward the good . . . and to punish the bad . . . because of their respective characters despite what the evidence in the case shows actually happened."

*Milenkovic v. State*, 86 Wis. 2d 272, 278, 272 N.W.2d 320, 323 (Ct. App. 1978) (quoting CALIFORNIA LAW REVISION COMMISSION, REPORT RECOMMENDATION & STUDIES 615 (1964)). The rules of evidence governing character evidence justifiably limit its use for the above reason. The methods of proof for character evidence as prescribed in § 904.05, STATS., further limit the potentially prejudicial impact of the character evidence. As it has been noted:

Where character is a material, consequentialist fact—referred to . . . as an "essential element"—which must be proved, permitting the introduction of all relevant evidence is most likely to yield the truth about a crucial issue. Consequently, evidence of specific instances is allowed, in addition to proof by reputation or opinion.

In other cases—where character is used circumstantially to prove a consequential fact—proof by specific instances is not permitted for practical reasons. The jury may give this evidence too much weight, or an accused may be put to the difficult task of preparing to refute numerous charges covering potentially the entire period of his life. Moreover, it is likely to lead to claims of surprise and confusion.

2 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE ¶ 405[01] at 405-15 to 405-16 (1994) (citations omitted) (discussing Federal Rule of Evidence 405, the federal equivalent of § 904.05, STATS.).

Thus, the evidentiary rules governing character evidence are designed to prevent potentially prejudicial evidence of little probative value from reaching the jury. The two specific instances of Alicia's past conduct at issue in this case are prejudicial because they are the type of character evidence that are, *inter alia,* the type likely to " 'distract the trier of fact from the main question of what actually happened.' " *Milenkovic,* 86 Wis. 2d at 278, 272 N.W.2d at 323 (citation omitted). Accordingly, we conclude the trial court properly prevented this prejudicial, low-probative-value evidence from reaching the jury. Since Evans has no constitutional right to present evidence that is outweighed by its prejudicial effect, his constitutional claim is without merit. *See Pulizzano,* 155 Wis. 2d at 646, 456 N.W.2d at 330.

## III. TRIAL COURT COMPETENCY

Evans also contends that the trial court lost competency to proceed because of alleged deficiencies in his post-arrest probable cause determination and because of a four-day delay between his arrest and initial appearance. The State contends that Evans failure to object to his post-arrest, pretrial detention before his trial commenced constituted a waiver pursuant to § 971.31(2), STATS.

An objection based on a defect in the institution of a criminal proceeding must be raised before trial by motion or be deemed waived. *See* § 971.31(2), STATS.; *State v. Lampkins*, 51 Wis. 2d 564, 570, 187 N.W.2d 164, 167 (1971). In *Desjarlais v. State*, 73 Wis. 2d 480, 490, 243 N.W.2d 453, 458 (1976), the Wisconsin Supreme Court held that challenges to the timing of an initial appearance and to the timing of a post-arrest determination of probable cause under the Uniform Criminal Extradition Act allege a "defect in the institution of the proceeding." *Id.* Here, Evans did not raise his objection to the timing of his probable cause hearing and initial appearance until after his conviction. We, therefore, deem his argument waived, precluding appellate review as a matter of right. *See State v. Copening*, 103 Wis. 2d 564, 570-71, 309 N.W.2d 850, 853 (Ct. App. 1981). This court may, however, in the interests of justice, address the merits of an issue we deem otherwise waived if constitutional issues are raised and there are no factual issues that need resolution. *Id.* We conclude that the interests of justice will best be served if we address the merits of his claim. *Id.*

*A. Deficiencies in Probable Cause Determination*

■

Evans presents several challenges to his post-war-rantless arrest probable cause hearing. He asserts that his probable cause hearing was deficient because: he was not present at the hearing, the probable cause determination was improperly based on an unsworn police "show-up" report, and the court commissioner was without statutory power to make the probable cause determination. A suspect detained pursuant to a warrantless arrest has a Fourth Amendment right to prompt judicial determination of whether probable cause exists for the arrest. *Gerstein v. Pugh*, 420 U.S. 103, 124-25 (1975). Absent extraordinary circumstances, "prompt" means within forty-eight hours. *Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991). Whether Evans's Fourth Amendment rights were violated raises an issue of "constitutional fact" that we review *de novo. See, e.g., State v. Woods*, 117 Wis. 2d 701, 715-16, 345 N.W.2d 457, 465 (1984).

■

Evans's first contention has already been addressed by the Wisconsin Supreme Court. In *State v. Koch*, 175 Wis. 2d 684, 698, 499 N.W.2d 152, 160, *cert. denied*, 114 S. Ct. 221 (1993), the court concluded that an "arrested person has no right to a physical appearance before a judicial officer for the probable cause hearing." "The post-arrest probable cause determination is required to fulfill the same function for suspects arrested without warrants as the pre-arrest probable cause determination fulfills for suspects arrested with warrants." *Id*. Therefore, to comply with the requirements of *Gerstein* and *Riverside* this probable cause hearing need not be an adversarial proceeding, nor is the defendant's presence necessary. *Id*.

Evans additionally alleges that the court commissioner's probable cause determination was invalid because the commissioner based its determination solely on the assertions contained in an unsworn police "show-up" report. In *Koch*, the supreme court stated that in both arrest warrant issuances and post-warrantless arrest situations, "a neutral magistrate is required to determine whether there is probable cause to believe an offense was committed by the suspect." *Id.* In footnote 8 appended to this discussion, the supreme court stated: "The probable cause finding can be based upon the complaint, affidavits, or testimony of complainant or witnesses under oath." *Id.* at 698 n.8, 499 N.W.2d at 160 n.8 (citing § 968.04(1), STATS.).[5] The State concedes that a post-arrest determination of probable cause should be based on sworn testimony, whether oral or written, in order to comport with similar state and federal requirements for arrest warrant probable cause determinations. We agree.

All of the examples cited in footnote 8 of *Koch*, are certified by some form of oath or affirmation. A criminal complaint must be made "upon [an] oath before a district attorney or judge." Section 968.01(2), STATS.

---

[5] The language in footnote 8 tracks the statutory requirements for the issuance of an arrest warrant pursuant to § 968.04(1), STATS.:

> **(1) Warrants.** If it appears from the complaint, or from an affidavit or affidavits filed with the complaint or after an examination under oath of the complainant or witnesses, when the judge determines that this is necessary, that there is probable cause to believe that an offense has been committed and that the accused has committed it, the judge shall issue a warrant for the arrest of the defendant or a summons in lieu thereof. The warrant or summons shall be delivered forthwith to a law enforcement officer for service.

Likewise, affidavits attached to the complaint are sworn to by inclusion when the complaint is made under oath. Finally, the testimony of the complainant or a witness before a judge or magistrate is also examined under oath. Section 968.04(1), STATS. Accordingly, because both the arrest warrant and warrantless arrest probable cause determinations fulfill the same functions, we conclude footnote 8 in *Koch* requires that, at a minimum, the basis for a warrantless arrest probable cause determination should be of equal reliability to those used as a basis for issuing an arrest warrant. Because the items enumerated in § 968.04(1), STATS., *supra* note 4, all require an oath or affirmation, we conclude that any item used as a basis for probable cause in post-warrantless arrest determinations must also be sworn to, either orally or in writing.

In this case, the commissioner based his determination on the signed but unsworn police show-up report, an item not provided for in § 968.04(1), STATS. The State posits that this violation was harmless. Because we are satisfied beyond a reasonable doubt that the error did not contribute to Evans's conviction, we agree. *See State v. Dyess*, 124 Wis. 2d 525, 541-42, 370 N.W.2d 222, 230-31 (1985); *Chapman v. California*, 386 U.S. 18, 24 (1967).

First, although the police report was not made under oath, it was signed by Milwaukee Police Detective Randy Kolosovsky and approved by a supervisor. If it was falsified, it would subject both persons to felony prosecution for misconduct in public office under § 946.12, STATS. Second, the substantive allegations of the police report were memorialized in the sworn criminal complaint issued on January 27. Evans has not shown that there are any substantive changes in these

allegations between the police report and the complaint. Thus, because the report had sufficient reliability, and because the allegations were not altered once they were sworn to in the complaint, we are satisfied beyond a reasonable doubt that the use of the police report in this case did not contribute to Evans's conviction. Therefore, its use was harmless.

Finally, we conclude that the court commissioner had authority to make the probable cause determination. Evans argues that because § 757.69(1)(b), STATS., does not list such determinations within the court commissioner's enumerated powers, the court commissioner acted beyond its jurisdiction. The supreme court has departed from the rigid rule that court commissioners have only those powers specifically enumerated by statute. *See State ex rel. Perry v. Wolke*, 71 Wis. 2d 100, 103, 237 N.W.2d 678, 679-80 (1976). While the power to perform a particular act cannot be predicated upon a mere inference or implication, the statute will not be construed to prohibit additional acts merely because they are not particularized. *Id.* at 103-04, 237 N.W.2d at 680. For example, in *Perry*, the court suggested that it would find that a court commissioner was empowered to conduct preliminary examinations by a "residuum of power" left to the court commissioner were it not for other provisions of the statute that refuted that power. *Id.* at 104-05, 237 N.W.2d at 680.[6]

---

[6] Subsequent to *Perry*, § 757.69(1)(b), STATS., was amended to authorize full-time court commissioners to conduct preliminary hearings and arraignments. 1989 Wis. Act 31, § 2748; 1987 Wis. Act 27, § 2128c.

Pursuant to § 757.69(1)(b), STATS., court commissioners may be appointed to issue arrest warrants. The standard for post-arrest probable cause determinations is the same as that used in the issuance of a search warrant. *Gerstein*, 420 U.S. at 111-12. We have no problem concluding that the power to issue warrants is the power to determine probable cause to arrest and detain. To conclude that a full-time court commissioner can make that determination before arrest, but not after the suspect is detained, is to resurrect the rigidity rejected in *Perry*. Therefore, we conclude the court commissioner had authority to make a probable cause determination on Evans's warrantless arrest.

*B. Delay Between Arrest and Initial Appearance*

Evans additionally alleges that the four-day delay between his arrest and his initial appearance violated the "reasonable time" requirements of § 970.01(1), STATS., and therefore, his due process rights. Section 970.01(1) provides in part:

> **Initial appearance before a judge. (1)** Any person who is arrested shall be taken within a reasonable time before a judge in the county in which the offense was alleged to have been committed.

The statutory right of an initial appearance "within a reasonable time" is a codification of the due process rights guaranteed by the United States and Wisconsin Constitutions. *State v. Harris*, 174 Wis. 2d 367, 374, 497 N.W.2d 742, 745 (Ct. App. 1993). Section 970.01(1), STATS., "does not provide for a specific time frame in which this appearance must take place." *Koch*, 175

Wis. 2d at 696, 499 N.W.2d at 159. If, however, the initial appearance is to also serve as the *Riverside* probable-cause hearing it must be held within 48 hours barring extraordinary circumstances. *Id.* at 697, 499 N.W.2d at 159. In cases where a defendant's *Riverside* determination was properly made in a proceeding prior to the initial appearance, this court looks at the individual circumstances of the case to determine whether the initial appearance was held within a "reasonable time" from the defendant's arrest. *See Wagner v. State*, 89 Wis. 2d 70, 76, 277 N.W.2d 849, 852 (1979).

We have stated that "absent either prejudice or other unforeseen circumstances . . . the interval between an 'arrest' and an initial appearance is never unreasonable where the arrested suspect is already in the lawful physical custody of the State." *Harris*, 174 Wis. 2d at 375, 497 N.W.2d at 795 (where defendant escaped prior to sentencing, a delay between his arrest and his initial appearance for the escape charge was not unreasonable as he was already in lawful police custody).

Additionally, the supreme court has stated that a "post-arrest detention will be permitted as long as the detention is for a proper purpose." *Wagner*, 89 Wis. 2d at 76, 277 N.W.2d at 852. Such proper purposes include: determining whether to release or to charge the suspect, checking out a story told by the witness or the suspect, and gathering evidence. *Id.*

In the present case, the police arrested Evans early on January 24, a Friday morning. He received a *Riverside* hearing within eight hours of his arrest. On Monday, January 27, the district attorney filed a criminal complaint against Evans and a hold was placed on

his probation. His initial appearance was the following day, Tuesday, January 28.

From our review of the totality of the circumstances in this case, we conclude that Evans received his initial appearance within a "reasonable time" after his arrest as prescribed by § 970.01(1), STATS. Evans states that he was improperly detained for nearly ninety-six hours before his initial appearance. Eight hours after his arrest, however, he received a *Riverside* hearing that determined there was probable cause for his detainment. Additionally, once a hold was placed on his probation on Monday, he was in the lawful physical custody of the State, and consequently the delay from January 27 to January 28 cannot be considered unreasonable. *See Harris*, 174 Wis. 2d at 375, 497 N.W.2d at 795. Furthermore, we are unconvinced that Evans's detainment from his Friday arrest to the Monday probation hold resulted in any prejudice to Evans because the State garnered no evidence from Evans during this period.

For all of the above reasons, we conclude that Evans's post-arrest detainment did not violate the requirements of *Gerstein*, *Riverside*, and their progeny; nor was the delay before his initial appearance "unreasonable."[7]

---

[7] As a final note, we address Evans' contention that the proper remedy for a *Riverside* violation is a dismissal with prejudice of the charge against the defendant. As we recently stated in *State v. Golden*, 185 Wis. 2d 763, 519 N.W.2d 659 (Ct. App. 1994):

> The appropriate remedy for a *Riverside* violation may be suppression of evidence that is obtained as a result of the violation—*i.e.*, after the point at which the delay became unreasonable. A *Riverside* violation, however, is not a jurisdictional defect causing a trial

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Evans also claims that he received ineffective assistance of counsel because of the failure of his three different attorneys to request a dismissal based on the alleged *Riverside* violation. We reject this argument as well.

Whether or not counsels' assistance was ineffective requires the application of the two-pronged test established in *Strickland v. Washington*, 466 U.S. 688 (1984). *State v. Pitsch*, 124 Wis. 2d 628, 633, 369 N.W.2d 711, 714 (1985). The first prong requires the defendant show that the attorney's performance was deficient. *Id.* The second requires that the defendant show that the deficient performance prejudiced the defense such that the result of the trial cannot be said to be reliable. *Id.* Furthermore, if the defendant fails to adequately show one prong, we need not address the second. *Strickland*, 466 U.S. at 697. We review ineffective assistance of counsel claims as a mixed question of fact and law. *Pitsch*, 124 Wis. 2d at 633-34, 369 N.W.2d at 714. We will only reverse the trial court's findings of fact if they are clearly erroneous. *Id.* at 634, 369

court to lose competency over the case. Therefore, we conclude that dismissal with prejudice or the voiding of a subsequent conviction is not required as the remedy for a *Riverside* violation unless the delay resulted from a deliberate *Riverside* violation producing prejudice to the defendant's ability to prepare a defense.

*Id.* at 769 , 519 N.W.2d at 661 (citations omitted).

Evans has not alleged that the delay between his arrest and his initial appearance was either deliberate, or resulted in prejudice to his ability to prepare a defense. Therefore, regardless of our conclusions on the merits of his claim, dismissal without prejudice would not have been the appropriate remedy to any alleged *Riverside* violations.

N.W.2d at 714. Whether counsel's assistance was ineffective, and whether counsel's performance was prejudicial are questions of law that we review *de novo*. *Id*. at 634, 369 N.W.2d at 715.

Evans was represented by three separate attorneys during the early stages of his prosecution; none of them challenged the alleged *Riverside* violation or asked for a dismissal based on the violation. Attorney Jill Tan represented Evans at his initial appearance. She indicated that she could not recall why she did not object to the timing of the initial appearance, but that her normal practice was to see if a commissioner "had signed off as to probable cause" on the police report and that if this had occurred, she would raise no objection. Attorney Steve Kohn briefly represented Evans before he was permitted to withdraw his representation. Kohn indicated that because he believed Evans would remain in custody on the probation hold, he did not object to the pretrial detention. He also stated his belief that Evans's only remedy for a *Riverside* violation, or an untimely initial appearance was a dismissal *without* prejudice, in which case the state would simply reissue the charge. Finally, Evans's trial counsel, Isadore Engle, acknowledged that she did not object to Evans's pretrial detention because she assumed that all jurisdictional motions would already have been made and because the defendant was in custody on a probation hold.

From these facts we can determine that none of the three attorneys' legal assistance was constitutionally ineffective. Further, as we stated above, dismissal with prejudice is not the appropriate remedy for a *Riverside* violation. Therefore, the failure of Evans's three attorneys to ask for a dismissal cannot be considered

ineffective performance. Because we find counsels' performances constitutionally sound, we need not address the prejudice prong of the *Strickland* test. *Strickland*, 466 U.S. at 697.

For all of the foregoing reasons, the judgment and the order of the trial court are affirmed.

*By the Court.*—Judgment and order affirmed.