STATE of Wisconsin, Plaintiff-Respondent,

v.

Devon L. BEAN, Defendant-Appellant.†

Court of Appeals

*No. 2010AP1898–CR. Submitted on briefs June 23, 2011.
—Decided August 30, 2011.*

**2011 WI App 129**

(Also reported in 804 N.W.2d 696.)

† Petition to review denied 1-24-12.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Scott D. Obernberger* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Gregory M. Weber*, assistant attorney general.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. BRENNAN, J. Devon L. Bean appeals from an amended judgment of conviction entered after he pled guilty to one count of robbery with threat of force

411

as party to a crime. Bean argues that the circuit court erred in denying his motion to suppress his confession on three separate grounds: (1) his statement amounted to an impermissible "sew-up" confession; (2) his right to remain silent was not "scrupulously honored"; and (3) his confession was not voluntary. For the reasons which follow, we affirm.

## BACKGROUND

¶ 2. Our recitation of the facts is based upon the circuit court's written order following a hearing on the motion to suppress. The parties do not contest the facts as set forth by the circuit court.

¶ 3. Shortly after 1:00 a.m. on January 22, 2009, Milwaukee police arrested Bean as a suspect in a carjacking. Police had observed three men fleeing from a stolen white 1996 Jeep only minutes before. Police followed tracks in the snow leading from the stolen Jeep to another vehicle and found Bean hiding under the vehicle, along with two other men. The Jeep had been carjacked less than five minutes prior to Bean's arrest, only a mile and one-half away from where he was found hiding. The owner of the Jeep reported that three men had been involved in the carjacking.

¶ 4. Approximately thirty-six hours after the three men were arrested, two of the men—Justin Brown and Cortez Jackson—confessed. Both Brown and Jackson were acquainted with Bean, and both contended in their confessions that Bean was the principal actor in the carjacking.

¶ 5. Bean was interrogated at the same time as Brown and Jackson, but Bean initially denied involvement in the carjacking. He was interrogated four separate times over the next sixty hours before he confessed.

412

¶ 6. Bean was first interrogated by Milwaukee Police Detective Tracey Becker at 1:45 p.m. on January 22, 2009, approximately twelve and one-half hours after his arrest. Bean was administered the *Miranda* warnings[1] and Bean said he was willing to talk to Detective Becker. Bean answered the detective's questions about his background for approximately ten minutes, but denied participating in the carjacking. Detective Becker terminated the interview approximately twenty-five minutes after it began.

¶ 7. Approximately eleven hours later, at 1:10 a.m. on January 23, 2009, Milwaukee Police Detective Jeffrey Norman interrogated Bean. Bean was again administered the *Miranda* warnings, and again said he was willing to answer questions. Detective Norman confronted Bean about where he was found hiding upon his arrest and about the fact that Bean was found with a face mask. Bean continued to deny his involvement in the carjacking and explained that he always wears a face mask on cold winter days. Police collected a DNA sample and fingerprinted Bean. The interrogation ended about one and one-half hours after it began.

¶ 8. At 5:35 p.m. on January 23, 2009, approximately fifteen hours after the second interrogation, Milwaukee Police Detective Dale Borman attempted to interrogate Bean.[2] Bean declined to answer any ques-

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] The trial court's findings are silent on whether Detective Borman administered Bean the *Miranda* warnings before attempting the third interrogation. However, it is undisputed that regardless of whether the *Miranda* warnings were administered, Bean invoked his right to remain silent and Detective Borman honored Bean's decision to invoke the right.

413

tions. Detective Borman accepted Bean's decision without contest and terminated the interrogation after only two minutes.

¶ 9. At 1:10 p.m. on January 24, 2009, approximately nineteen and one-half hours after the third interrogation, and at least a day after the other suspects had confessed, Detective Ralph Spano administered the *Miranda* warnings to Bean, and Bean agreed to talk. The circuit court described the tone of the interview as "polite" and found that Bean was "subdued, though cooperative." About ten minutes into the interrogation, Bean confessed to participating in the carjacking.

¶ 10. On January 27, 2009, the State filed a criminal complaint charging Bean with one count of armed robbery with threat of force as party to a crime. The complaint alleged that Bean told police during the January 24 interview with Detective Spano that: he carjacked a vehicle with Brown and Jackson; Brown had a revolver at the time of the carjacking; Bean was the driver of the car; shortly after they drove off, Jackson observed a squad car turning around to follow them; he pulled over when he saw the police squad car, ran, and eventually hid under another vehicle.

¶ 11. Bean filed a motion to suppress his confession, making the same three arguments he makes here. A hearing was held before the circuit court, at which Detective Spano testified, and tape recordings of all four interrogations were entered into evidence.[3] Follow-

---

[3] In making its findings of fact, the circuit court had the benefit of listening to the tape recordings of all four of the police interrogations with Bean from January 22–24, 2009. While those recordings were entered into evidence during the hearing on the motion to suppress, they were not included in the record

ing the hearing, the circuit court entered a written order setting forth its findings of fact and denying Bean's motion to suppress.

¶ 12. Following the denial of his motion to suppress, Bean pled guilty to robbery with threat of force, as party to a crime.[4] The circuit court sentenced him to sixty-six months of initial confinement and thirty months of extended supervision. Bean now appeals, arguing that the circuit court erred in denying his motion to suppress.

### DISCUSSION

¶ 13. Bean argues that the circuit court erred in denying his motion to suppress his confession because: (1) his statement amounted to an impermissible "sew-up" confession; (2) his right to remain silent was not "scrupulously honored"; and (3) his confession was not voluntary. We address each issue in turn.

¶ 14. When we review a circuit court's ruling on a motion to suppress evidence, we apply the clearly erroneous standard to the circuit court's findings of fact. *State v. Vorburger*, 2002 WI 105, ¶ 32, 255 Wis. 2d

we received on appeal. Consequently, we rely exclusively on the circuit court's written order to inform us of the contents of the recordings.

[4] In most instances, a defendant who pleads guilty waives all nonjurisdictional defects and defenses. *See County of Racine v. Smith*, 122 Wis. 2d 431, 434, 362 N.W.2d 439 (Ct. App. 1984). However, WIS. STAT. § 971.31(10) (2009–10) makes an exception to this rule, which allows appellate review of an order denying a motion to suppress evidence, notwithstanding a guilty plea. All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

537, 648 N.W.2d 829. However, we review the circuit court's application of constitutional principles to the findings of fact *de novo. Id.*

## I. Bean's confession was not a sew-up.

■

¶ 15. Bean first argues that his statement to Detective Spano should be suppressed as an impermissible sew-up confession because he had already been in custody for sixty hours at the time of the fourth interrogation, the police already had statements from Brown and Jackson implicating Bean, and the police had already decided that the case would be presented to the district attorney's office. Because the critical components of the investigation had already been completed and the decision to present the case to the district attorney's office had already been made, Bean argues that the only possible purpose for the fourth interrogation was to obtain an impermissible sew-up confession. We disagree.

■■

¶ 16. "[A]uthorities may detain a person suspected of a crime for a period of time after arrest in order to determine whether to release the suspect or to make a formal complaint." *Wagner v. State*, 89 Wis. 2d 70, 75, 277 N.W.2d 849 (1979) (citing *Phillips v. State*, 29 Wis. 2d 521, 534, 139 N.W.2d 41 (1966)). However, while police can detain and interrogate a defendant "to secure sufficient evidence to either charge him with a crime or to release him, the police cannot continue to detain an arrested person to 'sew up' the case by obtaining or extracting a confession or culpable statements to support the arrest or the guilt." *Phillips*, 29 Wis. 2d at 535.

¶ 17. The Wisconsin Supreme Court "has not established a set period of time beyond which the suspect must either be released or charged." *Wagner*, 89 Wis. 2d at 76. However, "an unreasonably long detention before release or initial appearance before a judge constitutes a denial of due process under Art. I, sec. 8, of the Wisconsin Constitution and renders inadmissible any confession, whether voluntary or involuntary, obtained from the suspect during the detention." *Wagner*, 89 Wis. 2d at 75 (footnotes omitted).

¶ 18. In Wisconsin, "post-arrest detention will be permitted as long as the detention is for a proper purpose, and the period of detention is not unjustifiably long under the circumstances of the case." *Id.* at 76 (internal citations omitted). "Activities that the authorities might reasonably undertake in order to determine whether to release or to charge include interrogating the suspect or witnesses, checking out the story told by the suspect or witnesses, and gathering evidence." *Id.*

¶ 19. We note, however, that "[a] confession does not become inadmissible as a 'sew-up' confession merely because the [S]tate, prior to the confession, had information sufficient to sustain a charge." *Krueger v. State*, 53 Wis. 2d 345, 357, 192 N.W.2d 880 (1972). The question we must determine is simply "whether the delay was inordinate and the detention was illegal." *Id.* Based upon the totality of the circumstances presented in this case, we conclude that the delay in charging Bean was not inordinate and that his detention was not illegal.

¶ 20. From the time Bean was arrested for probable cause until he confessed to the carjacking sixty

hours later, the police were attempting to gather evidence and eliminate discrepancies in the various suspects' stories. In other words, they were continually moving forward, for the purpose of determining whether to charge Bean with participation in the carjacking.

¶ 21. After Bean was discovered hiding underneath a vehicle at the end of a trail of footprints leading from the stolen Jeep, police began interrogating both Bean and his cohorts—Brown and Jackson. Approximately thirty-six hours after the three were arrested, both Brown and Jackson confessed and implicated Bean in the carjacking. About three hours after both confessed, the police attempted to interrogate Bean again, permitting him an opportunity to respond to Brown's and Jackson's allegations, which conflicted with Bean's assertions that he was not involved in the carjacking, but Bean invoked his right to remain silent. The police steadfastly honored his invocation and immediately ended the interrogation.

¶ 22. Detective Spano did not attempt to interrogate Bean for approximately nineteen and one-half hours after Bean invoked his right to silence. Detective Spano explained the delay during the suppression hearing. He testified that the police, out of respect for Bean's invocation of his right to remain silent, did not want to pressure Bean into making a statement. Consequently, they allowed Bean time to sleep overnight. The next morning, when Detective Spano arrived for his shift, he needed to update himself on the case, reading the reports of the prior interrogations with Brown, Jackson, and Bean, as well as attend to other routine matters. As a result, it was 1:10 p.m. in the afternoon of

January 24 before he had an opportunity to sit down and question Bean. At that time, Bean was ready to talk.

¶ 23. We conclude "that the police activities during [Bean's] detention were reasonably and efficiently directed to determining whether . . . to charge him and that the police . . . did not utilize the period of detention to attempt to coerce a confession." *Wagner*, 89 Wis. 2d at 78–79. During the sixty hours between the time of Bean's arrest and his confession, the police were constantly moving forward with their investigation, interviewing suspects and attempting to resolve discrepancies in the suspects' stories. Given the circumstances, and the suspects' conflicting stories, sixty hours was not an impermissibly long time. *Cf. McAdoo v. State*, 65 Wis. 2d 596, 600–04, 223 N.W.2d 521 (1974) (in which the supreme court found, under the totality of the circumstances, that a five-day interval between the defendant's arrest and his last statement to detectives was reasonable and not coercive).

¶ 24. We also note, that Bean's detention complied with the requirements of *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), and the Milwaukee County Circuit Court Rules. Bean received a probable cause hearing at 10:33 a.m. on January 23, 2009,[5]

---

[5] The State contends in its response brief that the probable cause hearing occurred on January 23, 2009, at 10:33 a.m. Bean does not challenge this particular fact. Consequently, we accept it as true. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted facts are deemed admitted). However, we note with displeasure that rather than cite to evidence in the record supporting its factual allegation, as the State is required to do by WIS. STAT. RULE 809.19(1), (3), the State merely cites to its own brief before the circuit court in response to Bean's motion

within the forty-eight hours required by *Riverside. See State v. Evans*, 187 Wis. 2d 66, 86, 522 N.W.2d 554 (Ct. App. 1994). Thereafter, Bean confessed to the carjacking twenty-seven hours later, around 1:20 p.m. on January 24, well within seventy-two hours of the probable cause determination. *See* MILWAUKEE COUNTY CIRCUIT COURT RULE § 4.21A. (2010) (permitting that a suspect be detained for no more than seventy-two hours without being charged or without a further probable cause determination).

¶ 25. In sum, we conclude that Bean's statement to police was not an impermissible sew-up confession.

## II. Bean's right to remain silent was scrupulously honored.

¶ 26. Next, Bean argues that the police did not scrupulously honor his right to remain silent after he invoked the right in the third interrogation because the police attempted to interrogate him a fourth time regarding the same offense. We disagree.

¶ 27. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that for a confession to be admissible under the Fifth Amendment privilege against self-incrimination, the defendant must be informed of various rights before questioning. *Id.* at 478–79. However, the police are not permanently barred from interrogating a suspect who has invoked the right to silence. Rather, "the admissibility of state-

to suppress. Trial court briefs are not evidence. *See State v. Eugenio*, 210 Wis. 2d 347, 358, 565 N.W.2d 798 (Ct. App. 1997) (a lawyer's arguments are not evidence).

ments obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.' " *Michigan v. Mosley*, 423 U.S. 96, 104 (1975); *see also State v. Hartwig*, 123 Wis. 2d 278, 285, 366 N.W.2d 866 (1985) ("The essential issue is whether, under the circumstances, the defendant's right to silence was scrupulously honored.").

¶ 28. *Mosley* sets forth a five-factor test used in analyzing whether an accused's rights were scrupulously honored or if, instead, police interrogation resulted in a constitutional violation. *See, e.g., State v. Badker*, 2001 WI App 27, ¶ 12, 240 Wis. 2d 460, 623 N.W.2d 142 (Ct. App. 2000). The *Mosley* factors are:

> (1) whether the original interrogation was promptly terminated; (2) whether interrogation was resumed after a significant period of time; (3) whether the accused received *Miranda* warnings at the beginning of the subsequent interrogation; (4) whether a different officer resumed the questioning; and (5) whether the subsequent interrogation was limited to a different crime than the previous interrogation.

*Badker*, 240 Wis. 2d 460, ¶ 12 (citing *Mosley*, 423 U.S. at 105–06; *Hartwig*, 123 Wis. 2d at 284).

 

¶ 29. A determination of whether a defendant's right to remain silent was scrupulously honored turns on the particular facts of each case. *See Hartwig*, 123 Wis. 2d at 284–85. "The absence or presence . . . of the *Mosley* factors is not exclusively controlling and these factors do not establish a test which can be 'woodenly' applied." *Id.*

¶ 30. Here, Bean admits that the first four of the five *Mosley* factors were met. When Bean invoked his right to silence at the beginning of the third interview Detective Borman immediately ceased questioning and left the room; the police allowed Bean a full night's rest and waited over nineteen and one-half hours before attempting to talk with him again; Bean was administered the *Miranda* warnings before being interrogated for the fourth time; and a different police detective reinitiated contact with Bean. Bean contends, however, that because the subsequent interrogation did not meet the fifth *Mosley* factor—that the subsequent interrogation be limited to a different crime—his right to remain silent was not scrupulously honored. He is mistaken.

¶ 31. In *State v. Turner*, 136 Wis. 2d 333, 401 N.W.2d 827 (1987), the Wisconsin Supreme Court held that although it was undisputed that *Mosley* factors four and five had not been met—to wit, that the same police officer resumed questioning on the same crime as the previous interrogation in which the defendant had invoked his right to remain silent—the defendant's right to silence was not violated. *Turner*, 136 Wis. 2d at 356, 360. The court noted that "courts are moving toward a more flexible analysis under *Mosley*," *Turner*, 136 Wis. 2d at 357–58, and "[i]t is not determinative, absent other evidence of police overbearing or coercive tactics, that all of the *Mosley* factors [be] satisfied," *Turner*, 136 Wis. 2d at 360. Because there was nothing in the record "to support a finding that little was done to assure [the] defendant that his right to silence would not be scrupulously honored or that other improper tactics were used that could have arguably coerced [the] defendant into talking," the court concluded that the defendant's Fifth Amendment right to silence was not violated. *Id.* at 359.

¶ 32. Similarly, here, there is no evidence "to support a finding that little was done to assure [Bean] that his right to silence would not be scrupulously honored or that other improper tactics were used that could have arguably coerced [Bean] into talking." *See id.* During the sixty hours that elapsed between his arrest and confession, Bean was interrogated three times for a mere two hours total. On each occasion he was aware of the *Miranda* warnings. On those occasions he wished to speak to police, Bean properly waived those warnings. On the third occasion, when he invoked his right to remain silent, Detective Borman immediately concluded the interrogation, asking no more questions. Police then waited nineteen and one-half hours, permitting Bean a full night's sleep, before attempting to speak with him again, at which time a different detective resumed questioning. Moreover, the tone of the fourth interrogation was "polite" and Detective Spano "was anything but threatening." In short, Bean's right to remain silent was scrupulously honored; there is simply no evidence in the record that the police made any attempt to induce Bean not to invoke his right to silence or attempted to coerce him to talk. *See Turner*, 136 Wis. 2d at 359.

¶ 33. We also reject Bean's suggestion that *Maryland v. Shatzer*, 130 S. Ct. 1213 (2010), should guide our decision. *Shatzer* held that the *Edwards* rule—prohibiting police from interrogating a suspect after the suspect invokes his right to counsel until counsel has been made available or unless the suspect reinitiates communications, *see Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981)—does not apply when a suspect has been released from custody for fourteen days, *Shatzer*, 130 S. Ct. at 1221, 1223. In other words,

*Shatzer* comments upon the right to counsel, not the right to silence, and provides no authority for the resolution of this issue.

## III. Bean's confession was voluntary.

■■■

¶ 34. Finally, Bean argues that his confession was not voluntary because "[h]e was in custody for 60 hours, he was questioned on four separate occasions, the last of which was after he invoked his right to remain silent." We are unconvinced that is enough to render his statement involuntary.

■■■■

¶ 35. The State bears the burden of showing, by a preponderance of the evidence, that Bean's statement was "the voluntary product of rational intellect and free, unconstrained will." *See State v. Jiles*, 2003 WI 66, ¶¶ 25–26, 262 Wis. 2d 457, 663 N.W.2d 798. Determining whether a statement was voluntary involves "balancing the characteristics of the suspect against the type of police tactics that were employed to obtain the suspect's statement." *State v. Ward*, 2009 WI 60, ¶ 19, 318 Wis. 2d 301, 767 N.W.2d 236. Relevant characteristics include the defendant's "age, education, intelligence, physical or emotional condition, and prior experience with law enforcement." *State v. Davis*, 2008 WI 71, ¶ 37, 310 Wis. 2d 583, 751 N.W.2d 332. In evaluating police conduct, we examine "the length of questioning, general conditions or circumstances in which the statement was taken, whether any excessive physical or psychological pressure was used, and whether any inducements, threats, methods, or strategies were utilized in order to elicit a statement from the defendant." *Id.* We determine voluntariness based on the totality of the circumstances. *Id.*

¶ 36. The circuit court concluded, and we agree, that there is nothing about Bean that makes him particularly susceptible to police pressure. He is an adult, has been arrested before, and is familiar with the criminal justice system. At the time of his confession, he had been in custody for sixty hours, but during that time he had eaten and had been provided an opportunity for a full night's sleep before the interrogation during which he confessed. Police had only questioned Bean for a total of two hours before his confession, and that two hours had been divided up among three different interrogations. Before each interrogation Bean was aware of his *Miranda* rights, and when he invoked his right to remain silent at the beginning of the third interrogation, that invocation was scrupulously honored. The circuit court described the tone of the fourth interrogation as "low-key" and found that "Detective Spano was anything but threatening."

¶ 37. Based upon the totality of the circumstances, we conclude that Bean's confession was voluntary.

*By the Court.*—Judgment affirmed.