# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2018AP2274

Complete Title of Case:

DEMONTA ANTONIO HALL,

PETITIONER-RESPONDENT,

V.

WISCONSIN DEPARTMENT OF JUSTICE,

RESPONDENT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | February 26, 2020 |
| Submitted on Briefs: | August 15, 2019 |
| Oral Argument: | December 17, 2019 |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Reilly, P.J., and Gundrum, J. |
| Concurred: | Neubauer, C.J., Gundrum, J. |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the respondent-appellant, the cause was submitted on the briefs of *Anthony D. Russomanno*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |
| Respondent ATTORNEYS: | On behalf of the petitioner-respondent, the cause was submitted on the brief of *Kori L. Ashley* of *Legal Action of Wisconsin*, Milwaukee. |

## COURT OF APPEALS
## DECISION
## DATED AND FILED

### February 26, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.     2018AP2274**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CV13149

DEMONTA ANTONIO HALL,

    PETITIONER-RESPONDENT,

V.

WISCONSIN DEPARTMENT OF JUSTICE,

    RESPONDENT-APPELLANT.

       APPEAL from an order of the circuit court for Milwaukee County: WILLIAM S. POCAN, Judge. *Affirmed.*

       Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶1     REILLY, P.J. Demonta Antonio Hall was arrested on September 21, 2015, for possession of an electronic weapon and on January 11, 2017, for second-degree sexual assault. In both instances, the state, within two days of arrest, decided not to charge Hall. Wisconsin law provides that if a person is arrested but then not charged or cleared of the offense that person has the right to have the record of his or her arrest expunged[1] from the state's crime database. WIS. STAT. § 165.84(1). Hall requested that his arrests from September 21, 2015, and January 11, 2017, be expunged. The Department of Justice (DOJ) refused.

¶2     DOJ admits that while standing alone the arrests would be expunged, it could not do so because DOJ had administratively appended ("cycled") some earlier ordinance violations to those arrests. The circuit court ordered expungement of the September 21, 2015 and January 11, 2017 arrest records, and we affirm as a plain reading of WIS. STAT. § 165.84(1) so requires.

---

[1] WISCONSIN STAT. § 165.84(1) (2017-18) requires a fingerprint record to be "returned." The parties use the term "expunge" interchangeably with "return." I do not (nor did the parties) address the distinction, if any, between the meaning of "return" versus "expunged." Our supreme court, in discussing the statute, previously referred to it in terms of "expunction of records." ***Brier v. E.C.***, 130 Wis. 2d 376, 384, 387 N.W.2d 72 (1986). I further join in Judge Neubauer's discussion of this issue. Neubauer, C.J. concurring, ¶29 n.7. For clarity, going forward I will refer to the records being expunged.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

## BACKGROUND

*DOJ's Crime Database*

¶3     DOJ is required to maintain a database of persons arrested or taken into custody.[2]  WIS. STAT. § 165.83(2); *see also* WIS. STAT. § 165.84(1).  All arrest records received from local law enforcement become part of the database and are fingerprint based.  *See* § 165.84(1).  As DOJ explains, the fingerprint record received from local law enforcement is a "10-digit fingerprint card with the person's name, arrest tracking number, arresting officer and agency, and a list of the specific offenses for which the person was arrested."  The records of arrest become part of the database, but the legislature has created a mechanism by which an individual who was arrested may request expungement of his or her fingerprint record pursuant to § 165.84(1).

¶4     "The Database has many uses critical to the security of Wisconsin's residents, one of which is assisting members of the public in discovering whether a given individual has a criminal history."  *Teague v. Schimel*, 2017 WI 56, ¶4, 375

---

[2] DOJ manages a centralized criminal history database, which "contains detailed information of arrests, arrest charges, prosecution, court findings, sentences, and state correctional system admissions and releases.  The database is an accumulation of information submitted by Wisconsin law enforcement agencies, prosecutors, courts, and the Wisconsin Department of Corrections as" governed by WIS. STAT. §§ 165.83 and 165.84. WISCONSIN DEPARTMENT OF JUSTICE, *Background Check & Criminal History Information*, https://www.doj.state.wi.us/dles/cib/background-check-criminal-history-information (last visited Feb. 2, 2020).  DOJ must "[o]btain and file fingerprints, descriptions, photographs and any other available identifying data on persons who have been arrested or taken into custody in this state." Sec. 165.83(2)(a).  The information is required for felony offenses, § 165.83(2)(a)1., some misdemeanors, § 165.83(2)(a)2.-3., if the person is a fugitive from justice, § 165.83(2)(a)4., and "[f]or any other offense designated by the attorney general," § 165.83(2)(a)5.  DOJ shall also "[a]ccept for filing" such information filed at the discretion of local law enforcement agencies for all other offenses, i.e., for misdemeanor and ordinance charges.  Secs. 165.83(2)(b), 165.84(1).

Wis. 2d 458, 896 N.W.2d 286. The information in the database is a public record (subject to a few exceptions); therefore, a person's prospective employer or landlord has the right to request and examine records within the database, referred to as a Wisconsin criminal history report, related to that person.[3]

¶5 DOJ organizes the crime database by creating "cycles." Problematically, DOJ has created a "cycle" format in which arrests that have no relation or nexus to one another are included together as one "arrest event." For example, as in this case, DOJ included minor ordinance offenses that predated the current arrest event by months/years. DOJ argues that it may not expunge an arrest record "unless the arrested person is released without charge or is cleared of *all* offenses" in the cycle, which it calls the "arrest event"—an all or nothing procedure. DOJ argues that as Hall pled guilty to two municipal offenses that were unrelated in time or course of conduct to the two felonies at issue, the two felonies, despite never being charged, must remain in the database and a part of Hall's public criminal history report.

¶6 The United States Supreme Court has indicated that the value of an arrest record is questionable at best:

> The mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct. An arrest shows nothing more than that someone probably suspected the person

---

[3] The information in the database is readily available to law enforcement. WIS. STAT. § 165.83(2)(n). Members of the public may request a criminal history report for a fee. WIS. STAT. § 165.82(1), (2). "To determine whether an individual has [a criminal history], a person submits a request for a criminal history record search to the DOJ, which can be done by mail or online through the Wisconsin Online Record Check System ('WORCS')…. The DOJ's computer system compares the information provided by the requester against the nearly 1.5 million records in the Database." *Teague v. Schimel*, 2017 WI 56, ¶¶4, 6, 375 Wis. 2d 458, 896 N.W.2d 286.

> apprehended of an offense. When formal charges are not filed against the arrested person and he is released without trial, whatever probative force the arrest may have had is normally dissipated.

*Schware v. Board of Bar Exam'rs*, 353 U.S. 232, 241 (1957) (footnote omitted). Further, the negative consequences of an arrest record are well known. *United States v. Dionisio*, 410 U.S. 1, 10 (1973) (explaining that an arrest record "results in a record involving social stigma" (citation omitted)); *Menard v. Mitchell*, 430 F.2d 486, 490 & n.17 (D.C. Cir. 1970) (describing numerous "serious difficulties" an individual with a known arrest record may be subject to); *Davidson v. Dill*, 503 P.2d 157, 159 (Colo. 1972) ("[I]t is common knowledge that a man with an arrest record is much more apt to be subject to police scrutiny …. Prosecutors use arrest records in determining whether or not to formally charge an accused or even whether or not to allow a person to sit as a juror." (citations omitted)); *see also Teague*, 375 Wis. 2d 458, ¶¶53, 57, 68 ("[S]tigma caused by the DOJ's Criminal History Search report imposes a tangible burden on Mr. Teague's ability to obtain or exercise a variety of rights and opportunities recognized by state law … and so [he] has been deprived of a liberty interest."); Joan Uda, Comment, *Privacy, Law Enforcement, and Public Interest: Computerized Criminal Records*, 36 MONT. L. REV. 60, 66 (1975). It goes without saying that if DOJ publishes information about a person that it should not under the law, that information is highly prejudicial to a person's employment and housing opportunities as well as the person's reputation.

*Facts of this Case*

¶7 Hall was arrested on September 21, 2015, for possession of an electronic weapon. At the time he was arrested, Hall had an outstanding bench warrant for a traffic citation for operating while suspended (OWS) from October

13, 2014. Police had not filed any record with DOJ for Hall's OWS in October 2014 as a record for an ordinance violation is not statutorily required. *See* WIS. STAT. § 165.83(2)(a). Despite the OWS having no relation to Hall's arrest for possession of an electronic weapon (and not in the same course of conduct), DOJ included the OWS as part of Hall's "arrest event" (Cycle 6). Two days later, the state decided not to prosecute the possession of an electronic weapon charge. On that same date, Hall appeared in Milwaukee Municipal Court on the outstanding bench warrant for the OWS where he pled guilty and received a fine.

¶8     Hall was arrested on January 11, 2017, on an allegation of second-degree sexual assault with use of force. When arrested, he again had an outstanding bench warrant for failing to appear for an ordinance violation (disorderly conduct). Like the OWS, the disorderly conduct charge had not been filed with DOJ at the time of its occurrence as it was not an offense that required filing. Despite the disorderly conduct having no relation to Hall's arrest for sexual assault (and not in the same course of conduct), DOJ included the disorderly conduct as part of Hall's "arrest event" (Cycle 7). Two days later, the state decided not to prosecute the second-degree sexual assault with use of force. The disorderly conduct, like the OWS, was addressed in municipal court where Hall received a fine.

¶9     Hall requested expungement of the records of his arrests for possession of an electronic weapon and second-degree sexual assault. DOJ refused on the grounds that

> [t]he *arrest event* is not eligible for expungement pursuant to [WIS. STAT. §] 165.84(1) because the final disposition did not result in being released without charge or cleared of the offense through court proceedings. *All charges on a given fingerprint card must be released or cleared of the offense to qualify for an expungement.*

6

(Emphasis added.) Administratively, the refusal to expunge was upheld and Hall filed this WIS. STAT. ch. 227 petition for judicial review. *See* WIS. STAT. § 227.52. Upon review, the circuit court reversed the administrative decision of DOJ. DOJ appeals.

## DISCUSSION

¶10     This is an appeal under WIS. STAT. § 227.58 involving an agency decision, and therefore we review the decision of the agency, not the decision of the circuit court. *Myers v. DNR*, 2019 WI 5, ¶17, 385 Wis. 2d 176, 922 N.W.2d 47. We no longer defer to an administrative agency's conclusions of law. *Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, ¶3, 382 Wis. 2d 496, 914 N.W.2d 21; *see also* WIS. STAT. § 227.57(11).

¶11     Our de novo review begins with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶¶44-45, 271 Wis. 2d 633, 681 N.W.2d 110. "If the statutory language yields a 'plain, clear statutory meaning, then there is no ambiguity,' and there is no need to consult extrinsic sources of interpretation." *Myers*, 385 Wis. 2d 176, ¶18 (quoting *Kalal*, 271 Wis. 2d 633, ¶46).

¶12     At issue is the final sentence of WIS. STAT. § 165.84(1): "Any person arrested or taken into custody and subsequently released without charge, or cleared of the offense through court proceedings, shall have any fingerprint record taken in connection therewith returned upon request." DOJ argues that it may not expunge an arrest record under § 165.84(1), "unless the arrested person is released without charge or is cleared of *all* offenses" contained in what DOJ, in its discretion, has determined to be within an "arrest event." (Emphasis added.) Hall, in contrast, argues that § 165.84(1) "distinguishes between people who are

arrested and fingerprinted as part of that arrest and then 'subsequently' convicted for the conduct for which they were arrested and people who are arrested and who are 'subsequently' not charged or cleared through court proceedings."

¶13 DOJ's interpretation fails to present a plain language interpretation of the statute. DOJ suggests that the term "all" must be read into the statute, such that an individual must be "cleared of *all* offenses" and that an arrest is actually an "arrest event." Neither "all" nor "arrest event" appear anywhere in the statute. The statute references "the offense," not "all offenses," and the statute pertains to "[a]ny person arrested or taken into custody" without referencing the creation of an "arrest event."

¶14 The plain language of the statute is clear: "Any person arrested or taken into custody and subsequently released without charge, or cleared of the offense through court proceedings, shall have any fingerprint record taken in connection therewith returned upon request." WIS. STAT. § 165.84(1). In this case, Hall was arrested on September 21, 2015, and January 11, 2017, for the crimes of possession of an electronic weapon and second-degree sexual assault, respectively. Hall was never charged with either of those crimes. Hall was "released without charge," and under the plain terms of the statute, he is entitled to expungement of "any fingerprint record taken in connection therewith." *See* § 165.84(1).

¶15 The legislature included no language in the statute that defines an "arrest event," and DOJ has no statutory authority to "cycle" unrelated charges

8

together so as to prevent expungement.[4]  Hall's criminal history report contains arrest records of two serious felony crimes that the state recognized within two days that it would not prosecute.  Put bluntly, the statute plainly does not allow for an uncharged sexual assault to remain on a person's public record solely because DOJ decided to "cycle" an unrelated ordinance violation from over a year prior to the current arrest.[5]

## CONCLUSION

¶16    Our legislature has concluded that removal of uncharged or cleared crimes from a person's public crime record is entitled to statutory protection. WISCONSIN STAT. § 165.84(1) requires the expungement of an arrest record where the person was arrested but then not charged.  We reverse DOJ's administrative decision and remand with directions that DOJ expunge Hall's Cycle 6 and 7 arrest records from September 21, 2015, and January 11, 2017.

*By the Court.*—Order affirmed.

.

---

[4]  DOJ argues that it creates the "cycles" based entirely on the fingerprint card it receives from local law enforcement, which indicates that Hall was arrested for both the felony offenses as well as the ordinance violations.  Hall was not arrested for the OWS or the disorderly conduct on September 21, 2015, or January 11, 2017.  He had an outstanding warrant for failure to appear for that citation.  The arrests, if any, for those ordinance violations took place at the time Hall originally received the citations.

[5] This decision does not mandate expungement when a person is arrested for multiple offenses resulting from the same course of conduct and is not charged with or cleared of one (or more) of those offenses, provided all the criminal charges are related.

No.    2018AP2274(C)

¶17    NEUBAUER, C.J. (*concurring*).  I agree with the result the Lead Opinion reaches.  I disagree, however, that "[t]he plain language of the statute is clear," Lead Opinion, ¶14, as applied to the circumstances of this case.  Although it may be clear as applied to other facts, the statute becomes confusing and ambiguous when, as here, we apply it to multiple unrelated offenses spread over time while taking into consideration administrative constructs like "cycles" and "arrest events."  Because the language is susceptible to more than one plausible interpretation, *see* **State v. Herman**, 2002 WI App 28, ¶7, 250 Wis. 2d 166, 640 N.W.2d 539, we should analyze and resolve the ambiguity, which I conclude favors Hall's interpretation.[1]

¶18    The pertinent language states as follows:  "Any person arrested or taken into custody and subsequently released without charge, or cleared of the offense through court proceedings, shall have any fingerprint record taken in connection therewith returned upon request."  WIS. STAT. § 165.84(1).

---

[1] While the Lead Opinion correctly notes that we no longer defer to an agency's conclusions of law, Lead Opinion, ¶10, we still pay heed to the "experience, technical competence, and specialized knowledge of the agency," giving "respectful, appropriate consideration to the agency's views."  **Tetra Tech EC, Inc. v. DOR**, 2018 WI 75, ¶¶77-78, 382 Wis. 2d 496, 914 N.W.2d 21 (giving "due weight" under WIS. STAT. § 227.57(10) to an agency's decision is more a matter of persuasion than deference).  Here, DOJ points to no specialized knowledge or experience applicable to this fingerprint record return request, offering arguments focused on statutory interpretation.

¶19     It is agreed that, on October 13, 2014, Hall was cited for operating while suspended (OWS), a municipal ordinance violation for which no fingerprint record was taken. It is also agreed that, on September 21, 2015, Hall was arrested for a weapons offense and soon released without charge and that he would have been entitled to request and receive the fingerprint record related to his arrest. No dispute or ambiguity here. Absent other circumstances, the analysis and case would end: DOJ would have no fingerprint record for Hall.[2]

¶20     When arrested on September 21, 2015, however, Hall had the outstanding municipal warrant for the wholly unrelated traffic citation from about one year before. Hall eventually pled guilty to the civil citation.[3] At first blush, that citation would not seem to change anything regarding the record request, as a fingerprint record was not taken at the time of the prior municipal citation, and Hall was soon released without charge on the weapons offense, ostensibly entitling him to the return of the fingerprint arrest record.

¶21     Complicating matters, however, law enforcement and DOJ fused these arrests together. Consequently, the 2014 traffic offense and the 2015 weapons offense became part of Hall's "arrest record," which was then designated "Cycle 6" of Hall's criminal record. Thus, relying on the year-old unrelated municipal citation and having administratively tied that prior arrest to the weapons

---

[2] I am using the September 21, 2015 arrest, but note that these same points apply to the January 11, 2017 arrest.

[3] An action in municipal court for violation of an ordinance is a civil action. WIS. STAT. § 800.02(1). Among other information, citations and summons include the date, time, and place for appearance. Sec. 800.02(2), (4). Failure to appear may result in a municipal warrant for arrest or a default judgment. Sec. 800.02(5).

arrest, DOJ contends that Hall was not released without charge or otherwise cleared, thereby blocking the return of his fingerprint record.

¶22 Reasonable people could accept either of the interpretations offered by DOJ and Hall under the facts of this case. DOJ argues that when Hall was arrested and released without a weapons charge, it does not matter that he was not subsequently charged, because he was previously charged and subsequently convicted on the prior citation (no records should be returned). As the Lead Opinion explains, based on adding words to the statute, DOJ argues that all "arrest events" on the card must be considered together, and the individual must be cleared of "all" offenses. Hall contends he was arrested and released without a weapons charge, and the traffic citation was previously, not subsequently, charged. Because there is no substantive nexus between the arrests for the weapons offense and the prior traffic citation, there is no statutory basis to deny Hall's request to remove the uncharged arrest from public access, simply because law enforcement and DOJ have determined to group these unrelated arrests together. *See Herman*, 250 Wis. 2d 166, ¶7 (ambiguity arises when the language can be understood in different senses by well-informed persons).

¶23 It is entirely possible for statutory language to be clear by itself, but to then become difficult to interpret or use when matched against real-world, concrete situations. *See State v. McKee*, 2002 WI App 148, ¶9, 256 Wis. 2d 547, 648 N.W.2d 34; *see also Herman*, 250 Wis. 2d 166, ¶14 (acknowledging that the statute at issue was unambiguous on its face, but ultimately determining that it was "rendered ambiguous by the context in which it is sought to be applied," as its interaction with other statutes caused confusion); *State v. Ramirez*, 2001 WI App 158, ¶12, 246 Wis. 2d 802, 633 N.W.2d 656 (explaining that, although the statute may be clear as to what it criminalizes, it became ambiguous as to whether it

created a continuing offense). "[T]he plain meaning [of a statute] is seldom determined in a vacuum," so the language should be interpreted within the context in which it is used, and it must be done reasonably, so as to avoid absurd or unreasonable results. *State v. Dinkins*, 2012 WI 24, ¶33, 339 Wis. 2d 78, 810 N.W.2d 787 (citation omitted).[4]

¶24 When we construe a statute, our aim is to ascertain the intent of the legislature, and to that end we first consider the statutory language. *Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 247, 493 N.W.2d 68 (1992). If the language is found to be ambiguous, however, we examine that language in relation to the "scope, history, context, subject matter, and purpose of the statute" to determine legislative intent. *State v. Sweat*, 208 Wis. 2d 409, 417, 561 N.W.2d 695 (1997) (citation omitted).

¶25 As the Lead Opinion points out, *see* Lead Opinion, ¶15 n.4, Hall was not arrested for the OWS on September 21, 2015. Rather, he had an outstanding warrant for failure to appear for that citation. He was "subsequently released without charge" for the weapons offense, and DOJ acknowledges that he was not prosecuted for any new offenses—there was no "charge" for failure to appear. However, he was not "cleared" on the previously charged OWS. As applied to these facts, it is unclear what the statutory terms modify. Does "subsequently"

---

[4] The parties did not discuss whether WIS. STAT. § 165.84(1) should be considered a remedial statute. Remedial statutes have been defined as "those which afford a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries." *Bruner v. Kops*, 105 Wis. 2d 614, 619, 314 N.W.2d 892 (Ct. App. 1981) (citation omitted). Such statutes generally are to be "liberally construed to advance the remedy that the legislature intended to be afforded." *Fricano v. Bank of Am. NA*, 2016 WI App 11, ¶24, 366 Wis. 2d 748, 875 N.W.2d 143 (citation omitted).

(after the arrest) modify "released without charge," or simply "released." Does "cleared of the offense" refer only to the offenses that were the subject of the arrest and/or the charge, or does it refer to any offenses, including a prior unrelated municipal citation.

¶26   Although as applied to these facts the statutory language is ambiguous, its statutory purpose is quite clear and intelligible, leading to its most reasonable and proper application. The statute, versions of which are common in many states,[5] plainly affords a means for a person, who has been arrested or taken into custody and thereafter fingerprinted, to request, at his or her own initiative, that the state remove from its criminal database the fingerprint arrest record when the offense that was the subject of the arrest was never charged or was otherwise cleared. *See* WIS. STAT. § 165.84(1). As the Lead Opinion discusses, after law enforcement officials decide to release the person without charge, absent return of the fingerprint card, the arrest will nonetheless remain in the state criminal database as a mark on the person's record. *See State v. Bean*, 2011 WI App 129, ¶16, 337 Wis. 2d 406, 804 N.W.2d 696 (upon arrest, the state generally must either "determine whether to release the suspect or to make a formal complaint"); *Schware v. Board of Bar Exam'rs*, 353 U.S. 232, 241 (1957) (import of an arrest that is uncharged dissipates). The statute embodies a fundamental constitutional precept of our democracy and criminal justice system: the presumption of innocence until proven guilty. The legislature has determined that, upon request

---

[5] A law review article identified the states as of 2008. Fruqan Mouzon, *Forgive Us Our Trespasses: The Need For Federal Expungement Legislation*, 39 U. MEM. L. REV. 1, 31-32 n.142 (2008) ("Recognizing also that not all arrests result in conviction, and even an arrest record without a conviction can be harmful to an individual's future, the overwhelming majority of states allow an individual to seek the expungement of arrest records not resulting in conviction.").

for return, the government will no longer offer information about an uncharged arrest for a fee to the public.[6]

¶27 With that purpose in mind, the ambiguity discussed above should be resolved in favor of Hall. Not only does his arrest for the weapons offense meet the elements of the statute (arrested, subsequently released without charge), removal of Hall's fingerprint record is in line with the aim of the statute by removing an arrest record when no charges were brought. DOJ's proposed application of the statute to deny return because of the prior municipal citation, on the other hand, is too reliant on the use of administrative constructs like "arrest events" and criminal record "cycles," which are not referenced or even implied within the text or the scheme of this or any other identified statute.

¶28 Notably, as the two fingerprint cards for Hall's two uncharged arrests on September 21, 2015, and January 17, 2017, underscore, two cards were submitted when the two arrests were separated in time and course of conduct. Likewise, DOJ has not identified any requirement that the unrelated prior municipal citation be submitted on the same fingerprint card with the weapons offense.

---

[6] The importance of the ability to eliminate an arrest record that has lapsed is pointed up by what the Lead Opinion keenly notes—that, for a fee and with limited exceptions, any member of the public may request a criminal history report. Lead Opinion, ¶4 and n.3; *Teague v. Schimel*, 2017 WI 56, ¶¶106, 124, 375 Wis. 2d 458, 896 N.W.2d 286 (Abrahamson, J., writing separately) ("Criminal history records compiled under [WIS. STAT. ch.] 165 are made available to the public under the Open Records Law," and "[i]n 2015, [DOJ] processed about 900,000 'public criminal background check requests.'" (citation omitted)).

¶29    Without support for its arrest-commingling argument rooted in the statutory language itself, it is striking that DOJ does not offer any empirical or policy-based argument.  The result—fortuitously cobbling together an uncharged arrest with a prior ordinance violation for which no fingerprint record was taken, when there is no connection between the offenses in time or course of conduct—leaves one impressed with the absence of purpose.  When applying the statute to achieve its purpose, I decline to rely on DOJ's nonstatutory, administratively created constructs to the fingerprint card return request at issue here.[7]

---

[7] I respectfully disagree with Judge Gundrum's concurrence, in which he suggests that only the inked-up blotter cards need to be returned to Hall.  Because the "fingerprint record[s]," WIS. STAT. § 165.84(1), are the identifying and informational foundation that underpin the statutory database, once an individual record is removed, the related arrest information no longer has any basis and is also removed from access by the public.  *See Teague*, 375 Wis. 2d 458, ¶3 ("Each record is keyed to an individual's fingerprint.").  In its brief, DOJ describes the arrest records and the database itself as "fingerprint based," and that the fingerprint cards are "[t]he database's core ingredients."  DOJ's website confirms this several times:  "All arrest information in Wisconsin criminal history records maintained by the Wisconsin Department of Justice must be accompanied by an arrest fingerprint card."  WISCONSIN DEPARTMENT OF JUSTICE, *Background Check & Criminal History Information (Removal of Arrest Information Brochure)* https://www.doj.state.wi.us/dles/cib/background-check-criminal-history-information (last visited Jan. 13, 2020).

I note that law enforcement will still have information regarding the arrests in their possession.  *Cf. State v. Leitner*, 2002 WI 77, ¶¶38-40, 253 Wis. 2d 449, 646 N.W.2d 341 (concluding that WIS. STAT. § 973.015 (relating to expunctions of certain criminal convictions) required expunging only the record of the court, as opposed to those records of district attorneys and other law enforcement).

No. 2018AP2274(C)

¶30 GUNDRUM, J. (*concurring*). I agree that, as relevant to this case, the last sentence of WIS. STAT. § 165.84(1) refers only to Hall's sexual assault and electronic weapon arrests and not to the wholly unrelated offenses that occurred at a completely different time. I write separately because I believe the opinions of my colleagues go too far with their remedy.

WISCONSIN STAT. § 165.84 provides in relevant part:

> (1) All persons in charge of law enforcement … agencies *shall obtain*, or cause to be obtained, *the fingerprints* in duplicate, according to the fingerprint system of identification established by … the F.B.I., full face, profile and full length photographs, and other available identifying data, of each person arrested or taken into custody for an offense of a type designated in [WIS. STAT. §] 165.83(2)(a) …. *Fingerprints* and other identifying data of persons arrested or taken into custody for offenses other than those designated in [§] 165.83(2)(a) may be *taken* at the discretion of the law enforcement … agency concerned. Any person arrested or taken into custody and subsequently released without charge, or cleared of the offense through court proceedings, shall have any *fingerprint record taken in connection therewith returned* upon request.
>
> (2) *Fingerprints* and other identifying data required to be *taken* under sub. (1) shall be forwarded to the [Department of Justice] within 24 hours after *taking* for filing and classification ….

(Emphasis added.)

¶31 The record identifies two one-page, two-sided "FINGERPRINT CARD[S]." For each of the two cards, one side includes personal identifying information of the subject, and below that, fingerprints of the subject taken by law

enforcement (although in the record, the fingerprints are blacked out). On the bottom of this side of these cards, just below the fingerprints of the left four fingers together and the right four fingers together, the card respectively reads "LEFT FOUR FINGERS *TAKEN* SIMULTANEOUSLY" and "RIGHT FOUR FINGERS *TAKEN* SIMULTANEOUSLY." (Emphasis added.) The flip side of each of these cards includes various information, such as the subject's address, date of offense and date of arrest, arresting agency, and name of "OFFICIAL *TAKING* FINGERPRINTS (NAME OR NUMBER)." (Emphasis added.) Below that, it includes a section for "CHARGE/CITATION LITERAL, STATUTE NO. OR ORDINANCE." The first of these cards identifies "[WIS. STAT. §] 940.225(2)(A) 2ND DEGREE SEXUAL ASSAULT/USE OF FORCE," and marks that it is a "FELONY." Below that, the card identifies "DISORDERLY CONDUCT," and marks it as "NON-C."[1] The second card identifies "[WIS. STAT. §] 941.295(1) POSSESSION OF ELECTRIC WEAPON," and marks that it is a "FELONY." Below that, the card identifies "[WIS. STAT. §] 343.44(1)(A) OPERATING WHILE SUSPENDED," and marks it as "NON-C."

¶32 Based upon the plain language of WIS. STAT. § 165.84, I believe these two fingerprint cards are required to be returned to Hall, but nothing more. Both are "fingerprint record[s]" that were "taken" in connection with the arrest of Hall and are capable of being "returned."

¶33 Subsections (1) and (2) of WIS. STAT. § 165.84 refer to fingerprints "taken" by a law enforcement agency being forwarded to DOJ. I am able to find

---

[1] Based upon the totality of this case, it seems clear this is intended to mean "non-criminal."

nothing else in the record that would appear to meet the language of a "fingerprint record taken in connection [with the arrest]" such that it would need to be "returned" to Hall. Documents created by DOJ would not fall under this language in that they are not fingerprint records "taken," and they could not be "returned" to Hall in that they were never "taken" from him in the first place. The statute certainly says nothing about expunging all records related to a person's arrest.

¶34     In the last sentence of WIS. STAT. § 165.84(1), the legislature chose to direct that "any fingerprint record taken" in connection with the arrest be "returned" upon request if the person is not charged or is cleared of the offense. If the legislature, which also addressed the taking of photographs of an arrested suspect, had instead stated in that sentence that "any photographs taken in connection [with the arrest shall be] returned upon request," we would understand that it is only the photos themselves that must be returned, not a full-scale expunging of the "arrest record." The same holds for the "fingerprint record" that was "taken" in connection with the September 21, 2015 and January 11, 2017 arrests. As applicable to the circumstances of this case, under § 165.84(1) Hall has a right to only the "return" of the fingerprint cards themselves, as those are the only "fingerprint record[s]" that were "taken" in connection with the September 21, 2015 and January 11, 2017 arrests. Thus, I concur to the extent that the opinions of my colleagues order the return of those cards, but I do not agree that Hall is entitled under § 165.84(1) to broader "expungement" of his September 21, 2015 and January 11, 2017 "arrest records."

3