COURT OF APPEALS
DECISION
DATED AND FILED

July 6, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP22-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF2778

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TIFFANY LYNN SIMMONS,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: CAROLINA STARK, Judge. *Affirmed*.

Before Brash, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Tiffany Lynn Simmons appeals the judgment entered on her guilty pleas to first-degree intentional homicide and kidnapping, as

a party to the crimes.[1] Her sole claim on appeal is that the circuit court erred when it denied her suppression motion. *See* WIS. STAT. § 971.31(10) (2019-20).[2] We disagree and affirm the judgment.

## I. BACKGROUND

¶2 The State charged Simmons with first-degree intentional homicide, hiding a corpse, and kidnapping, all as a party to a crime. The complaint alleged that Simmons and her boyfriend, Shanta Pearson, kidnapped and murdered Tess White and then burned the corpse. White's burned remains eventually were found in a field in South Dakota. Simmons and Pearson fled to Colorado, where they were arrested following a traffic stop.

¶3 After being taken into custody, Simmons and Pearson were interviewed by officers on June 8, 2016. Simmons subsequently sought to suppress her statements.

¶4 During the suppression hearing, Detective Heather Stuettgen and Detective Caleb Porter testified. Detective Stuettgen testified that the police began the interview with Simmons by reading her rights under *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966), and Simmons indicated that she understood them. Simmons invoked her right to silence and the police officers immediately stopped questioning her. Simmons was returned to her cell.

---

[1] The Honorable Carolina Stark entered the judgment of conviction. The Honorable Jeffrey A. Conen denied Simmons' suppression motion.

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶5    Detective Porter testified that Pearson waived his *Miranda* rights and told officers that he would confess only if he and Simmons were in the same room.  After determining that more than two hours had passed from the time Simmons' interview had ended, the police then brought her into the same room as Pearson.  Detective Porter explained that he felt that bringing Simmons into the same room as Pearson "was the best way to continue questioning" Pearson and get his confession.  Thus, Detective Porter "honor[ed Pearson's] request to have Tiffany Simmons brought into the same room[.]"  Detective Porter acknowledged that at the same time, he was "attempting to reinitiate the questioning of" Simmons.

¶6    The detectives who were interviewing Pearson were not the same ones who had initially interviewed Simmons.  When Simmons was brought to the room, Detective William Sheehan advised her of her *Miranda* rights, and Simmons again said she did not want to answer questions.  According to Detective Porter, at that point, Pearson looked at her "and in a questioning manner said, 'No?'"  Simmons asked him what he wanted to do.  He responded that "he was not going to be confessing without her, and then he asked her what she wanted to do."  According to Detective Porter, "that went back and forth until finally she said, 'Fine, I'll talk.'"  He testified that the exchange between Pearson and Simmons lasted approximately twenty seconds.

¶7    After Simmons said she would talk, the police did not read her *Miranda* rights again.  Instead, Detective Porter said, "You know your rights.  Do you want to make a statement?"  Simmons agreed that she was willing to speak with the officers who then proceeded to question both she and Pearson.  Both of them provided incriminating statements, and Simmons admitted killing White.

¶8 The circuit court denied the motion to suppress, concluding that police did not violate Simmons' Fifth Amendment rights. The court found that Simmons was brought into the room with Pearson more than two hours after she initially invoked her right to silence, that after she was in the room with Pearson, she again invoked her right to silence, and that there was a "20-second timeframe" between that invocation and when she agreed to talk to police. By bringing the two suspects into the room together, the court found "the main focus" was to get Pearson's confession. The court additionally found "that either Mr. Pearson was going to give the entire confession as a result of meeting with Ms. Simmons" in the same room, or admit that he was "a major participant" in the crime. Bringing Simmons into the same room as Pearson was "driven by Mr. Pearson," and the fact that police obtained Simmons' voluntary confession was a "super bonus."

¶9 After the circuit court denied her suppression motion, Simmons pled guilty to first-degree intentional homicide and kidnapping.

## II. DISCUSSION

¶10 On appeal, Simmons challenges the denial of her motion to suppress. "We apply a two-step standard of review when reviewing a motion to suppress. First, we review the circuit court's findings of fact, and uphold them unless they are clearly erroneous. Second, we review *de novo* the application of constitutional principles to those facts." **State v. Martin**, 2012 WI 96, ¶28, 343 Wis. 2d 278, 816 N.W.2d 270 (emphasis added, citations omitted).

¶11 "Both the United States and Wisconsin Constitutions protect persons from state compelled self-incrimination." **State v. Cummings**, 2014 WI 88, ¶46, 357 Wis. 2d 1, 850 N.W.2d 915 (citation omitted); *see also* U.S. CONST. amend. V; WIS. CONST. art. I, § 8. "The critical safeguard of the right to silence is the

4

right to terminate questioning by invocation of the right to silence." ***State v. Hartwig***, 123 Wis. 2d 278, 284, 366 N.W.2d 866 (1985).

¶12 A suspect's right to remain silent includes both the initial right to remain silent and the right to cut off questioning. ***State v. Markwardt***, 2007 WI App 242, ¶24, 306 Wis. 2d 420, 742 N.W.2d 546. If the right is unequivocally asserted, police must "scrupulously" honor a suspect's decision to "cut off questioning." *See id.*, ¶¶24, 26. "If the suspect does not unambiguously invoke his or her right to remain silent, the police need not cease their questioning of the suspect." *Id.*, ¶28. Further, questioning can start again if the suspect reinitiates communication with police. *See **Edwards v. Arizona***, 451 U.S. 477, 484-85 (1981).

¶13 In ***Michigan v. Mosley***, 423 U.S. 96 (1975), the United States Supreme Court set forth several factors to analyze whether the resumption of questioning was permissible. *See **id.*** at 104-07. The ***Mosley*** factors are:

> (1) The original interrogation was promptly terminated.
> (2) The interrogation was resumed only after the passage of a significant period of time. (In ***Mosley*** it was two hours).
> (3) The suspect was given complete ***Miranda*** warnings at the outset of the second interrogation. (4) A different officer resumed the questioning. (5) The second interrogation was limited to a crime that was not the subject of the earlier interrogation.

***Hartwig***, 123 Wis. 2d at 284. The factors do not constitute a rigid test; instead, they provide a framework for determining whether the right to silence was scrupulously honored. *See **id.*** at 284-85.

¶14 We conclude that the ***Mosley*** factors support the conclusion that police scrupulously honored Simmons' right to silence. First, police promptly terminated the original interrogation of Simmons after she invoked her right to

silence. Second, a significant period of time—more than two hours—passed between Simmons' first invocation and when officers brought her into the room with Pearson. The third and fourth factors are met because Simmons was given her *Miranda* warnings again; she stated, "All right, I'll talk"; Detective Porter then reminded her of her rights; and she was questioned by different officers than those who conducted the first interrogation.

¶15     While the fifth *Mosley* factor was not met, that is not determinative of whether Simmons' right to silence was scrupulously honored. *See State v. Bean*, 2011 WI App 129, ¶¶30-31, 337 Wis. 2d 406, 804 N.W.2d 696 (concluding that the fact that fifth *Mosley* factor was not met did not mean defendant's right to silence was not scrupulously honored, when all other factors were met). "It is not determinative, absent other evidence of police overbearing or coercive tactics, that all of the *Mosley* factors were not satisfied." *State v. Turner*, 136 Wis. 2d 333, 360, 401 N.W.2d 827 (1987). There is no evidence of police overbearing or coercive tactics here.

¶16     We additionally reject Simmons' contention that the police violated her right to silence at the joint interrogation when, after her invocation, the officers allowed Pearson to speak with her. She likens the police conduct in this case to the police conduct at issue in *United States v. Lafferty*, 503 F.3d 293 (3rd Cir. 2007).

¶17     In that case, Lafferty's boyfriend told police that if he and Lafferty could talk privately, they would tell police about the crime at issue and that he and Lafferty wanted to speak to police together. *Id.* at 297. Before questioning them together, police read them both their *Miranda* rights, but Lafferty did not waive her rights. *Id.* During the joint questioning, Lafferty's boyfriend incriminated

himself and Lafferty. *Id.* Lafferty "was silent for the most part, … [but] did respond to questions directly addressed to her," and she "occasionally explained and/or clarified answers that [her boyfriend] gave, and indicated that she agreed with some of [his] answers[.]" *Id.* The Third Circuit court held that police did not scrupulously honor Lafferty's right to remain silent "inasmuch as Lafferty did not join in any of [her boyfriend]'s requests or express her willingness to be interrogated after asserting the privilege." *Id.* at 305.

¶18   In contrast to Lafferty, Simmons, after invoking her right to silence, reinitiated the conversation and affirmatively agreed to talk twenty seconds after the police read her *Miranda* rights and proceeded to voluntarily confess.[3] During the twenty seconds that lapsed, the police did not interrogate her. Her mere presence in the room with Pearson was not the "functional equivalent" of an interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). As described by the circuit court, Simmons' volunteered statement amounted to a "super bonus." "Volunteered statements of any kind are not barred by the Fifth Amendment[.]" *See Arizona v. Mauro*, 481 U.S. 520, 529 (1987) (citation omitted).

¶19   Simmons' right to remain silent was scrupulously honored, and the circuit court properly denied her motion to suppress. In light of this conclusion, we need not address the State's argument that any error was harmless.

---

[3] Simmons additionally asserts that the State "gets it wrong" by claiming she reinitiated the interrogation. She points to Detective Porter's testimony that he was attempting to reinitiate the questioning of Simmons. However, "[o]fficers do not interrogate a suspect simply by hoping that he will incriminate himself." *Arizona v. Mauro*, 481 U.S. 520, 529 (1987).

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.